Charles C. CUDD and Daral Morrow
Plaintiffs-Respondents,

V.

James R. CROWNHART, Defendant-Appellant.†

Court of Appeals

*No. 84–362. Submitted on briefs September 24, 1984.—
Decided January 8, 1985.*
(Also reported in 364 N.W.2d 158.)

† Petition to review denied.

For the appellant the cause was submitted on the briefs of *Thomas R. Schumacher* and *Doar, Drill & Skow, S.C.,* of Baldwin.

For the respondent the cause was submitted on the brief of *Keith Rodli* and *Rodli, Beskar & Boles, S.C.,* of River Falls.

Before Cane, P.J., Dean and Brown, JJ.

CANE, P.J.  James Crownhart appeals a judgment holding him liable for compensatory and punitive damages in an action for intentionally interfering with a prospective contract between the respondents, Daral Morrow and Charles Cudd and, a third party, LeRoy Toth. The primary issues are whether Wisconsin recognizes a cause of action for the intentional interference with a prospective contractual relation and, if so, whether there is sufficient credible evidence to support the

jury's findings. We conclude that there is a cause of action for the intentional interference with another's prospective contractual relation, but because the evidence is insufficient to support the jury's verdict, we reverse.

The alleged interference occurred when Toth expressed an interest in leasing a ten-acre parcel of land from the respondents with an option to buy. While Morrow and Toth were measuring the property and locating its boundaries, Crownhart, owner of the adjacent property, drove up to their property on his tractor. After some discussion, there was a disagreement as to the location of the property's boundary line. Much of the discussion centered around whether the respondents' property included a driveway near the boundary. Both Crownhart and Morrow argued that the boundary line was such that the driveway was located on their property. At that time there had been no survey regarding the property line. Crownhart also mentioned that Toth would freeze in the house. The disagreement developed into a shoving match between Crownhart and the interested purchaser, Toth. Crownhart took a "half swing" at Toth, who then chased Crownhart back to his tractor.

After this incident, Toth testified that he would have offered to purchase the property but for the boundary dispute with Crownhart. He did contact Morrow on two more occasions to see if the boundary issue had been resolved. When nothing happened to settle Crownhart's claim, Toth abandoned his interest in the respondents' property. There had been no discussion between Toth and Morrow regarding a rental price, security deposit, or purchase price.

## CAUSE OF ACTION

We conclude that there is a cause of action for the intentional interference with another's prospective con-

tractual relation. When Wisconsin first adopted the cause of action for intentional interference with an existing contractual relation, *Mendelson v. Blatz Brewing Co.*, 9 Wis. 2d 487, 491–94, 101 N.W.2d 805, 807–08 (1960), it adopted the original version of Restatement of Torts § 766 (1939), which at that time incorporated the causes of action for interference with both existing and prospective contractual relations.

In *Pure Milk Products Cooperative v. National Farmers Organization*, 90 Wis. 2d 781, 796, 280 N.W.2d 691, 698 (1979), our supreme court stated that "Wisconsin protects legitimate competition from predatory tactics by subjecting anyone who wrongfully interferes with existing or prospective contractual relations to liability." A Wisconsin plaintiff therefore has a remedy in a common law action for interference with existing contractual relations and for tortious interference with prospective contractual relations. *Qasem v. Kozarek*, 716 F.2d 1172, 1179 (7th Cir. 1983).

## NATURE OF THE CAUSE OF ACTION

In 1939, the American Law Institute took the position in § 766 of Restatement of Torts, that one who, without the privilege to do so, induces or otherwise purposely causes a third person not to (a) perform a contract with another or (b) enter into or continue a business relationship with another is liable to the other for the harm caused thereby. In the 1979 amended version, § 766(b) provides that one who intentionally and improperly interferes with another's prospective contractual relation is subject to liability to the other for his pecuniary harm resulting from the loss of the benefits of the relation when the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the

other from acquiring or continuing the prospective relation.

Although the Wisconsin appellate courts have not determined the nature of the third party's conduct required for interference with a prospective contract, other jurisdictions require intentional conduct and causation in order to impose liability. *See* 6 A.L.R. 4th 195, § 2 at 201–02 (1981). Also, in *Augustine v. Anti-Defamation League,* 75 Wis. 2d 207, 219, 249 N.W.2d 547, 553 (1977), our supreme court held that to recover for interference with a contract under Wisconsin law, it is essential that the defendant act intentionally. The court concluded that to have the requisite intent, the defendant must act with a purpose to interfere with the contract. If the actor does not have this purpose, his conduct does not subject him to liability even if it has the unintended effect of deterring the third person from dealing with the other. *Id.* We conclude that this intent requirement also applies to interference with prospective contracts.

The drafters of § 766 admit in their introductory notes that the law of intentional intereference with a prospective contractual relation is still in a formative stage and that liability depends upon an interplay of several factors and is not reducible to a single rule.[1] Restatement (Second) of Torts § 767 (1979) identifies a number of factors to consider when determining the propriety of the alleged tortfeasor's conduct. They are:

(a) The nature of the actor's conduct;
(b) The actor's motive;
(c) The interests of the other with which the actor's conduct interferes;
(d) The interest sought to be advanced by the actor;

---

[1] Restatement (Second) of Torts, Introductory Note to ch. 37, Interference with Contract or Prospective Contractual Relation (1979).

(e) The social interests in protecting the freedom of action of the actor and the contractual interest of the other;

(f) The proximity or remoteness of the actor's conduct to the interference; and

(g) The relations between the parties.

## SUFFICIENCY OF EVIDENCE

■

In this case, the jury found that Crownhart intentionally interfered with the prospective contractual relation between the respondents and Toth. When reviewing jury verdicts on appeal, we view the evidence most favorable to the verdict and affirm if there is any credible evidence upon which the jury could have based its decision. *Roach v. Keane,* 73 Wis. 2d 524, 536, 243 N.W. 2d 508, 515 (1976). Whether the plaintiff failed to meet his burden of proof presents a question of law. *Seraphine v. Hardiman,* 44 Wis. 2d 60, 65, 170 N.W.2d 739, 742 (1969).

■

We conclude that there is insufficient credible evidence to show that Crownhart intentionally acted with a purpose to induce or otherwise cause Toth to not enter into a contract with the respondents. The respondents argue that Crownhart's boundary dispute interfered with the sale of the property. They submit that Crownhart knew at the time of the dispute that he did not own the driveway, and he therefore misrepresented the boundary line's location to Toth. They reason that he knew the respondents were trying to sell the property, and that his disparaging remarks about Toth freezing in the house and his assault on Toth is sufficient evidence for the jury to reasonably infer that Crownhart acted with the intent to interfere with the property's lease or sale. We disagree.

The record demonstrates that there had been a continuing dispute over the boundary. After the confrontation with Crownhart, Toth was still willing to purchase the property if the boundary dispute was settled. The respondents had a survey completed and then, as a third cause of action in the instant complaint, they asked the court to establish the true boundary line. That cause of action was eventually settled before trial. As the Restatement makes clear, a party has a right to protect what he believes to be his legal interest. If Crownhart's position is ultimately incorrect, liability should nevertheless not be imposed on that lone factor. *See* Restatement (Second) of Torts § 773 (1979).

Viewing the evidence in a light most favorable to the respondents, we are satisfied from our review of the record that the evidence is insufficient for the jury to reasonably conclude that Crownhart intentionally acted with the purpose to induce or otherwise cause Toth to not enter into the prospective contract. At most, the evidence indicates that the confrontation about the boundary line had the effect of causing a possible buyer not to purchase the property until the boundary issue had been resolved. There are, however, no facts or inferences from any facts that could lead a jury to reasonably conclude that it was Crownhart's intention to induce or otherwise cause Toth not to lease or purchase the property. To conclude otherwise would be mere speculation. Consequently we reverse the judgment against Crownhart.[2]

*By the Court.*—Judgment reversed.

---

[2] Because our treatment of this issue disposes of the appeal, it is unnecessary to address the issues on punitive damages, attorney fees, and proof of compensatory damages.