65 F.3d 1381
 27 UCC Rep.Serv.2d 366
 AMERICAN SUZUKI MOTOR CORPORATION, a California corporation,
Plaintiff-Appellant, Cross-Appellee,
v.
BILL KUMMER, INCORPORATED, a Wisconsin corporation and
William B. Kummer, Defendants-Appellees, Cross-Appellants.
 Nos. 94-3128, 94-3037.
 United States Court of Appeals,
Seventh Circuit.
 Argued March 29, 1995.
Decided Sept. 15, 1995.
Rehearing Denied Oct. 12, 1995.
 
 Brian E. Butler, Gary M. Young (argued), Stafford, Rosenbaum, Rieser & Hansen, Madison, WI, for plaintiff-appellee.
 Gary L. Antoniewicz (argued), Christopher J. Dodge, Tomlinson, Gilman & Rikkers, Madison, WI, for defendant-appellant.
 Before BAUER and MANION, Circuit Judges, and STIEHL, District Judge.*
 MANION, Circuit Judge.
 
 
 1
 Bill Kummer, Inc. ("Kummer") entered into a Dealer Agreement with American Suzuki Motor Corp. ("Suzuki") giving Kummer the right to sell and service Suzuki motorcycles. In January of 1993, Suzuki notified Kummer of its intent to terminate the dealership and shortly thereafter Suzuki filed a complaint in federal court alleging breach of contract, violation of the Wisconsin Motor Vehicle Dealer Law, and tortious interference with prospective business relations. Kummer counterclaimed, alleging that Suzuki breached the Dealer Agreement, violated the Wisconsin Motor Vehicle Dealer Law and wrongfully terminated his Suzuki dealership. After a bench trial, held before a magistrate judge, the court held that neither party had breached the Dealer Agreement or violated the Wisconsin Motor Vehicle Dealer Law; that Kummer had not tortiously interfered with Suzuki's prospective contractual relations; and that Suzuki's termination of Kummer's dealership was proper. We affirm the district court's decision that Kummer had not tortiously interfered with Suzuki's prospective contractual relations and that Suzuki did not violate the Wisconsin Motor Vehicle Dealer Law or wrongfully terminate Kummer's dealership. However, we reverse the district court's holding that Kummer did not breach the Dealer Agreement or violate the Wisconsin Motor Vehicle Dealer Law, and remand with instructions to enter judgment on liability for Suzuki and to proceed with a determination as to damages.
 
 I. Statement of the Case
 
 2
 William B. Kummer, the owner and president of Bill Kummer, Inc. ("Kummer"), is in the business of selling motorcycles. In February of 1986, Kummer entered into an Authorized Suzuki Motorcycle Dealer Agreement ("Dealer Agreement") with American Suzuki Motor Corporation ("Suzuki"). This Dealer Agreement authorized Kummer to purchase Suzuki motorcycles and motorcycle parts and accessories for resale in his retail shop in Sheboygan, Wisconsin. Kummer in turn was required to use his best efforts to sell Suzuki motorcycles.
 
 
 3
 In each of 1987 and 1988, Kummer sold twenty-six Suzuki vehicles. Suzuki, however, was apparently not satisfied with Kummer's performance because on December 13, 1988 it sent Kummer notice that it was terminating the Dealer Agreement in 60 days. Upon receiving the notice of termination, Kummer filed a complaint with the Office of the Commissioner of Transportation of Wisconsin ("OCT") protesting the proposed termination. Wisconsin, like numerous other states, has a Motor Vehicle Dealer Law which is, in part, a dealer protection statute. Wis.Stat. Sec. 218. One of the aspects of this statute is that it prohibits unfair terminations and allows a dealer to protest a proposed termination by filing a complaint with the OCT. Wis.Stat. Sec. 218.01(3)(a)(17), 218.01(2)(bd)2. The filing of such a complaint triggers an automatic stay provision requiring any dealer agreement to remain in effect until the OCT reaches a final decision on the complaint. Wis.Stat. Sec. 218.01(2)(bd)2. After Kummer filed his complaint with the OCT protesting the 1988 termination, both Suzuki and Kummer were therefore bound by the terms of the Dealer Agreement until the OCT resolved the issues presented in Kummer's complaint.
 
 
 4
 But as could be expected, Kummer and Suzuki did not get along well during the automatic stay period. Kummer stopped ordering Suzuki motorcycles. Suzuki, for its part, stopped making personal visits to Kummer's shop. The strain between Kummer and Suzuki was exacerbated by the OCT's delay in resolving Kummer's complaint protesting the proposed termination. Kummer's complaint was originally filed on February 7, 1989, but a hearing before the OCT was not held until October of 1991, and it was January 4, 1993 before the OCT issued a proposed decision and June 8, 1993 before the OCT issued a final decision.
 
 
 5
 Both the proposed decision and the final decision of the OCT held that Suzuki had wrongfully terminated Kummer in December of 1988. By this time, however, Kummer no longer had any Suzuki motorcycles in stock. In fact, the record shows that Kummer had not purchased any Suzuki vehicles since December of 1988, and by September of 1989 Kummer had only three Suzuki vehicles in stock. By August of 1990, Kummer had sold his last Suzuki; since then Kummer had not stocked any more Suzuki motorcycles. Thus, when Suzuki received the OCT's proposed decision in January of 1993, it sent a new notice of termination to Kummer, now purporting to terminate Kummer for his failure to stock and sell Suzuki products during the mandatory stay period. That same day Suzuki filed a complaint in federal court alleging that defendant Bill Kummer, Inc.: (1) breached the Dealer Agreement with Suzuki; (2) violated the Wisconsin Motor Vehicle Dealer law; and (3) tortiously interfered with Suzuki's prospective contractual relations.[1] Kummer counterclaimed against Suzuki alleging that Suzuki breached the Dealer Agreement, violated the Wisconsin Motor Vehicle Dealer law and wrongfully terminated his dealership[2] Kummer also filed another complaint with the OCT protesting Suzuki's latest attempt to terminate his dealership.[3]
 
 
 6
 The case was tried before a magistrate. The magistrate, after holding a full bench trial on the merits of Suzuki and Kummer's complaints, held that neither Suzuki nor Kummer had breached the Dealer Agreement, that neither Kummer nor Suzuki had violated the Wisconsin Motor Vehicle Dealer law, and that Kummer had not tortiously interfered with Suzuki's prospective contractual relations. The magistrate also held that Suzuki's 1993 termination of Kummer was valid under the Wisconsin Motor Vehicle Dealer law. Both parties appeal the rulings adverse to their positions.
 
 
 7
 We have jurisdiction to hear an appeal directly from a magistrate judge's decision pursuant to 28 U.S.C. Sec. 636(c)(1) where all parties have consented to the magistrate hearing the case. In this case, Suzuki and Kummer, Inc. consented to the magistrate hearing the case. The record, however, did not evidence consent from William Kummer, individually. The court ordered the parties to address this jurisdictional issue with supplemental filings and in response Kummer, individually, attested that he had consented to having the case tried before a magistrate. This is sufficient to confer jurisdiction on this court. King v. Ionization Intern., Inc., 825 F.2d 1180, 1185 (7th Cir.1987) (holding that jurisdiction will be found where parties file a stipulation, even after the magistrate has entered judgment, stating that the proceeding before the magistrate and the entry of judgment had been with their consent); Smith v. Shawnee Library Sys., 60 F.3d 317, 321 (7th Cir.1995) (reaffirming King 's holding).
 
 II. Analysis
 
 8
 On appeal, Suzuki asserts that the court erred in finding that Kummer had not breached the Dealer Agreement, had not violated the Wisconsin Motor Vehicle Dealer Law and had not tortiously interfered with Suzuki's prospective contractual relations. In turn, Kummer argues that the court erred in holding that Suzuki had not breached the Dealer Agreement, had not violated the Wisconsin Motor Vehicle Dealer Law, and had not wrongfully terminated his dealership. We review a court's findings of fact for clear error and decisions of law de novo. Bankston v. Illinois, 60 F.3d 1249, 1254 (7th Cir.1995). Applying these standards, we consider Suzuki and then Kummer's appeals.
 
 A. Suzuki's Appeal
 
 9
 1. Breach of contract.
 
 
 10
 Suzuki first argues on appeal that the court erred in finding that Kummer had not violated the Dealer Agreement. Suzuki contends that Kummer failed to employ best efforts in ordering and selling Suzuki motorcycles after 1988 as required by the Dealer Agreement and as required by state law during the pendency of the OCT proceedings. At this point we emphasize that the merits of the December, 1988 notice of termination and Kummer's challenge of that termination in the OCT are not before us. At issue in this appeal is the conduct of the parties between 1988 and 1993 when the claim before the OCT was pending and when, under Wisconsin law and the terms of the contract, the parties were obligated to continue doing business.
 
 
 11
 There is no dispute here that Kummer stopped ordering and selling Suzuki products after he received the original notice of termination in December of 1988. The district court found as much when it stated that "Kummer chose to, in effect, abandon the Suzuki line while his litigation [with the OCT] was pending." And Kummer himself admitted that he stopped ordering and selling Suzuki products during this period. The court, however, found that "the parties mutually abandoned or modified their agreement, allowing a cessation from an active dealership agreement" or in other words, allowing Kummer to become "inactive as a Suzuki dealer." Relying on this finding of "mutual abandonment" the court thus denied Suzuki's claim for damages arising from any breach of the Dealer Agreement.
 
 
 12
 Suzuki claims that the court committed clear error in finding that the parties had modified the Dealer Agreement. In support of its position, Suzuki relies on the Dealer Agreement and Section 2-209(2) of the Uniform Commercial Code ("UCC"). The Dealer Agreement provides that any modification to the Dealer Agreement must be in writing. And Section 2-209(2) of the UCC adopted by Wisconsin statute section 402.209(2) provides that "[a] signed agreement which excluded modification or rescission except by a signed writing cannot be otherwise modified or rescinded, ..." Wis.Stat. Sec. 402.209(2). In this case there was no written modification, and therefore Suzuki claims that the Dealer Agreement could not be modified to allow Kummer to become "inactive as a dealer."
 
 
 13
 As a preliminary matter, we note that the U.C.C. applies in this case. The U.C.C. applies to transactions in goods, including mixed contracts for goods and services where the predominant factor is the transaction of the sale of goods. 402.102 Wis.Stats., App. 167. While Wisconsin has not yet considered whether a dealership agreement is predominantly for the sale of goods, virtually every jurisdiction that has addressed this issue has concluded that it is. See Sally Beauty Co. v. Nexxus Prod. Co., Inc., 801 F.2d 1001, 1005-06 (7th Cir.1986), and Paulson, Inc. v. Bromar, Inc., 775 F.Supp. 1329, 1333 (D.Hawaii 1991), listing jurisdictions holding that the UCC applies to distributorship agreements. We find the reasoning of these court persuasive and accordingly agree that the U.C.C. should apply in this case.
 
 
 14
 We thus turn to the application of section 2-209 of the UCC. As noted above, section 2-209(2) of the UCC provides that "a signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded...." This section prohibits Kummer and Suzuki from modifying the Dealer Agreement orally, or through their conduct, since the Dealer Agreement provided that any modification must be in writing. There is an exception to this rule however. Section 2-209(4) of the UCC provides that an "attempt at modification" which does not satisfy a contractual requirement that modifications be in writing, nevertheless "can operate as a waiver." "Such a waiver under the Uniform Commercial Code may take place through conduct as well as words." Federal Exp. Corp. v. Pan American World Airways, Inc., 623 F.2d 1297, 1302 (8th Cir.1980). See also U.C.C. 2-209, comment 4 ("Subsection (4) is intended, despite the provisions of subsections (2) and (3), to prevent contractual provisions excluding modification except by a signed writing from limiting in other respects the legal effect of the parties' actual later conduct."). An attempted modification by words or conduct, however, operates as a waiver only if the party seeking to enforce the attempted modification, reasonably relied on the attempted modification. Wisconsin Knife Works v. National Metal Crafters, 781 F.2d 1280, 1286-87 (7th Cir.1986); Moncrief v. Williston Basin Inter. Pipeline Co., 880 F.Supp. 1495, 1509 (D.Wyo.1995).
 
 
 15
 Kummer argues that the parties' conduct in this case constituted an attempt to modify the Dealer Agreement to allow for his non-performance of the Dealer Agreement during the automatic stay period and that under section 2-209(4), this attempted modification operated as a waiver of the Dealer Agreement's requirement that any modifications be in writing. The court did not address section 2-209(4) when it found a modification in this case; instead it relied on Wisconsin's common law principles concerning the modification of a contract by the parties' conduct. This analysis was acceptable, however, since Wisconsin case law interpreting section 2-209(4) is sparse, and we think that Wisconsin courts would apply common law principles in interpreting section 2-209(4). These principles provide that "the acts which are relied upon to modify a prior contract must be unequivocal in their character." Nelsen v. Farmers Mut. Auto. Ins. Co., 4 Wis.2d 36, 90 N.W.2d 123, 134 (1958) (internal quotations omitted). "Acts which are ambiguous in their character, and which are consistent either with the continued existence of the original contract, or with a modification thereof, are not sufficient to establish a modification." Id. Applying these principles, the court below found that Suzuki's conduct evidenced an intent to modify the Dealer Agreement to allow for Kummer's non-performance during the pendency of the OCT hearing. A review of the record and the court's opinion, however, demonstrates that this finding was clearly erroneous.
 
 
 16
 First, the magistrate judge noted that Suzuki expressed the desire to terminate the Dealer Agreement and designated Kummer as a dealer "pending termination." From this fact, the magistrate judge inferred that Suzuki had agreed to excuse Kummer's performance under the contract. But we do not see how Suzuki's desire to terminate Kummer can be considered an attempt to modify under the standards previously mentioned. Of course Suzuki wanted to terminate Kummer. That is what brought this action before the OCT and why Kummer was classified as pending termination. Suzuki, however, was prohibited from terminating Kummer during the pendency of the OCT hearing, and both Suzuki and Kummer were required to continue to perform under the terms of the Dealer Agreement and the Wisconsin Motor Vehicle Dealer Law. Suzuki's desire to terminate Kummer is simply irrelevant to whether Suzuki and Kummer agreed to modify the Dealer Agreement during the pendency of the OCT termination hearings.
 
 
 17
 The magistrate judge next focused on Suzuki's failure to send personal representatives to Kummer's store, as evidence that Suzuki agreed to allow Kummer's non-performance. The Dealer Agreement, however, did not require personal visits to Kummer's store. Indeed such visits would have been useless since Kummer (with minor exceptions) stopped purchasing Suzuki products after receiving the notice of termination.
 
 
 18
 The magistrate judge also focused on the fact that Suzuki reduced Kummer's 1991 motorcycle allocation to zero. This allocation, however, was based on prior year sales, which for Kummer amounted to zero. Moreover, even without an allocation, Kummer would still be able to purchase Suzuki motorcycles.
 
 
 19
 The court also indicated that since Suzuki did not reach an agreement with Kummer regarding a minimum sales volume, as required by the Dealer Agreement, Suzuki no longer intended to hold Kummer to his duty to stock and sell Suzukis. But this is not evidence of an intent to modify the agreement, especially where, as here, Suzuki and Kummer had never agreed to a minimum sales volume. And despite the failure of the parties to agree on a minimum sales volume, Kummer performed under the Dealer Agreement in 1987 and 1988 by selling twenty-six motorcycles each year. The failure of the parties to agree on a minimum sales volume may very well come into play in the determination of damages, but it does not demonstrate that Kummer was excused from purchasing any motorcycles.
 
 
 20
 Kummer next argues that the following excerpt from a letter sent to him by Suzuki's attorneys demonstrates a desire to modify the Dealer Agreement during the mandatory stay period: "Although we may differ as to whether Suzuki will succeed in its proposed termination, in the event Suzuki prevails, Kummer will have no mechanism by which to dispose of the remaining Suzuki inventory." Kummer relies on this letter as evidence that Suzuki no longer intended Kummer to perform under the Dealer Agreement. Kummer, however, confuses Suzuki's attempt to get Kummer to drop the OCT complaint (and allow Suzuki to terminate the Dealer Agreement) with an intent by Suzuki that Kummer be excused from performing under the Dealer Agreement pending the OCT hearing. In the same letter, Suzuki stated that "[i]n settlement of the protest and (sic) exchange for a letter of voluntary termination from Kummer, American Suzuki is willing to repurchase all new motorcycle and ATV inventory currently in the possession of the dealership at 100% of dealer net cost, without the assessment of Suzuki's standard restocking charges." At no time did Suzuki say or do anything to indicate that Kummer was not required to perform under the terms of the Dealer Agreement while the OCT hearing was pending. Rather, the evidence establishes that Suzuki attempted to induce Kummer into abandoning his fight to remain a Suzuki dealer. There is nothing illegal or improper with such actions. In fact, the Wisconsin Motor Vehicle Dealer law anticipates that, after the filing of a complaint, the parties may agree to allow the termination to take effect. Wis.Stat. 218.01.2(bo)1. Thus, Suzuki's desire to terminate Kummer was entirely consistent with requiring performance under the Dealer Agreement pending the OCT's resolution.
 
 
 21
 In the final analysis, none of the conduct relied on by the court indicates that Suzuki and Kummer had agreed to allow Kummer's nonperformance during the pendency of the OCT hearing. Indeed, Suzuki's conduct during this period was consistent with continued performance under the contract. During the mandatory stay period Suzuki continuously sought performance from Kummer. For example, Suzuki sent Kummer written notice of his ATV allocation, and shortly thereafter, a Suzuki representative called Kummer to discuss the new 1990 models. In October of 1989, Suzuki again contacted Kummer to determine how much of the allocation Kummer wanted to order. Further contacts were made in December of 1989 and January of 1990, concerning 1990 models. Suzuki also continuously informed Kummer that he was an active dealer and was required to perform under the terms of the Dealer Agreement. For instance, in 1990, after having received a letter from Kummer wherein Kummer demanded that Suzuki stop sending him literature because his dealership was terminated, Suzuki sent Kummer a letter stating: "Your initial statement that you were terminated on December 17 is not correct. Your dealership is on our records as current and active in all respects.... You should be actively stocking, promoting and selling Suzuki products until a decision is rendered." Again, in April of 1991, Kummer returned a technical manual to Suzuki claiming that he had no need for the manual because his dealership was terminated, and again Suzuki wrote to Kummer that "until the protest matter is settled you should remain a fully active and productive Suzuki dealer." One year later, in April of 1992, Kummer again stated in correspondence to Suzuki that his dealership was terminated, and Suzuki once again responded that Kummer was still an authorized Suzuki dealer and still responsible for stocking, promoting and selling Suzuki products.
 
 
 22
 Under the facts here, therefore, we conclude that it was clear error to find that Kummer and Suzuki's conduct constituted an attempt to modify the Dealer Agreement. See Green Const. Co. v. First Indem. of America Ins. Co., 735 F.Supp. 1254, 1262 (D.N.J.1990), aff'd 935 F.2d 1281 (3d Cir.1991) (holding that where evidence presented failed to indicate that the party waived performance, and where letters clearly indicated that the plaintiff was holding defendant to the terms of the contract, no reasonable juror could hold that a 2-209(4) waiver existed). And in these circumstances, in no event could Kummer demonstrate that he reasonably relied on Suzuki's conduct to support waiver under 2-209(4). Wisconsin Knife Works, 781 F.2d at 1287 (holding that an attempted modification is effective as a waiver only if there is reliance, reasonably induced and reasonable in extent).[4]
 
 
 23
 Alteratively, Kummer also argues that his nonperformance should be excused because Suzuki prevented him from performing. In support of his position, Kummer cites Gessler v. Erwin Co., 182 Wis. 315, 193 N.W. 363 (1923), where the Wisconsin Supreme court stated that "[t]here was also an implied agreement by both parties that neither would do any act preventing or tending to prevent its performance...." None of Suzuki's actions, however, prevented Kummer from ordering and selling Suzuki motorcycles while the OCT action was pending. In fact, Kummer conceded that "it could have continued ordering and selling Suzuki motorcycles after 1990 when it no longer had any inventory." The magistrate also found that Kummer was not "compelled to treat his dealership status as dormant. ... Kummer could have continued ordering and selling Suzuki vehicles while the proceedings were pending at the OCT and been in no worse a position than he was when he received the termination notice in December, 1988." Kummer's nonperformance, therefore, cannot be excused on the basis that Suzuki prevented the performance.
 
 
 24
 As a final excuse for nonperformance, Kummer points to the remedial purpose of the Wisconsin Motor Vehicle Dealer law and the fact that Suzuki's original termination in December of 1988 was wrongful. Specifically, Kummer contends that the Wisconsin Motor Vehicle Law was designed to protect dealers and that he should not be punished for failing to perform under the terms of the Dealer Agreement where Suzuki started all of the problems when it wrongfully terminated him in 1988.
 
 
 25
 Kummer is correct that the Wisconsin Motor Vehicle Dealer law was designed to protect dealers. Forest Home Dodge, Inc. v. Karns, 29 Wis.2d 78, 138 N.W.2d 214, 218 (1965) (the legislative intent of the Wisconsin Motor Vehicle Dealer law was to protect auto dealers from unfair and coercive manufacturers). This protection allowed Kummer to force Suzuki to continue in an unwanted contractual relationship. It also entitled Kummer to recover costs and attorney's fees stemming from the December 1988 wrongful termination, which he succeeded in doing. See supra at 1384 n. 2. But Kummer cannot have it both ways. When he filed the complaint with the OCT, Suzuki was required to abide by the terms of the Dealer Agreement, and so was Kummer. Suzuki did so, but Kummer did not; it just stopped stocking and selling Suzukis. Kummer was obligated to continue to use its best efforts to sell Suzuki motorcycles and the failure to do so constituted a breach of contract. Since no other result would be consistent with the record, the judgment in favor of Kummer on Suzuki's breach of contract claim is reversed with instructions to enter judgment on liability for the plaintiff and to proceed to a determination of damages. Carr v. Allison Gas Turbine Div., 32 F.3d 1007, 1012 (7th Cir.1994) (reversing judgment in favor of defendant with instructions to enter judgment on liability for the plaintiff, since no other result would be consistent with the record, and proceeding to determine the appropriate remedy).
 
 
 26
 2. Wisconsin Motor Vehicle Dealer Law.
 
 
 27
 Suzuki next argues that Kummer's breach of the Dealer Agreement also constituted a violation of Wisconsin Motor Vehicle Dealer law, which entitled Suzuki to treble damages and costs. Considering this contention requires some statutory gymnastics. First, we look to Subsection 218.01(9)(am) of the Wisconsin Motor Vehicle Dealer law which provides that: "If a court finds that a violation of a practice described in par. (a)1 or 2 is wilful, a licensee[5] shall recover damage in an amount equal to 3 times the pecuniary loss, together with actual costs including reasonable attorney fees." Referenced Paragraph (a)(1) in turn provides that:
 
 
 28
 a licensee may recover damages in a court of competent jurisdiction for pecuniary loss, together with actual costs including a reasonable attorney fee, if the pecuniary loss is caused by any of the following:
 
 
 29
 1. A violation by any other licensee of sub. (3)(a)4....
 
 
 30
 Subsection 218.01(3)(a)4 for its part provides that a ground for denial, suspension or revocation of a license is "[w]ilful failure to comply with any provision of this section...." Section 218.01(2)(bd)2 constitutes "any provision of this section" and it provides: "Agreements and certificates of appointment shall continue in effect until final determination of the issues raised in such complaint."
 
 
 31
 We have now arrived at the section which Suzuki contends Kummer violated, subsection 218.01(2)(bd)2. Suzuki argues that Kummer violated this section by refusing to order and sell motorcycles as required by the Dealer Agreement. As discussed above, Kummer was required under the Dealer Agreement to purchase Suzuki motorcycles and use his best efforts to sell the same. When Kummer refused, he also refused to continue under the terms of the agreement. This is sufficient to constitute a violation of subsection 218.01(2)(bd)2. Cf. Wisconsin Truck Center, Inc. v. Volvo White Truck Corp., 692 F.Supp. 1010, 1013 (W.D.Wis.1988), aff'd in part, rev'd in part, 894 F.2d 1338 (7th Cir.1990) (table). And as set forth above, a violation of subsection 218.01(2)(bd)2 constitutes a violation of section 218.01(3)(a)4, which is one of the subsections enumerated in section 218.01(9)(a)1 as subject to damages. A wilful violation of section 218.01(9)(a)1 allows Suzuki to recover treble damage pursuant to section 218.01(9)(am).
 
 
 32
 Kummer does not deny that, if he violated subsection 218.01(2)(bd)2, he thereby violated subsection 218.01(3)(a)4 and then as a result of subsection 218.01(9)(a) and (am), Suzuki is entitled to recover treble damages and costs. In fact, as will be seen below, Kummer also seeks treble damages for Suzuki's alleged failure to continue under the terms of the Dealer Agreement. Kummer, however, claims that since he was not required to continue to perform under the Dealer Agreement, Suzuki is not entitled to treble damages. We have already concluded that Kummer was required to continue to perform under the Dealer Agreement. Therefore, the only question is whether Kummer's failure to do so was wilful. For Kummer's actions to be wilful within the meaning of chapter 218.01, he merely had to intentionally fail to continue under the terms of the Dealer Agreement. See Department of Transp. v. Transportation Com'n, 111 Wis.2d 80, 330 N.W.2d 159, 165-66 (1983). No malice or ill-will is needed. Id. In this case, the record clearly demonstrates that Kummer acted intentionally when he stopped ordering and selling Suzuki motorcycles. And in fact he admits that he did so, albeit in order to protect himself financially in the event the OCT upheld Suzuki's December 1988 termination, rather than out of ill-will or malice. But as seen above, no malice or ill-will need be proved. Id. Suzuki was therefore entitled to treble damages and costs pursuant to sections 218.01(9)(a) and (am).
 
 
 33
 3. Tortious interference with prospective contractual relations.
 
 
 34
 Suzuki's last argument on appeal is that the magistrate erred in holding that Kummer had not tortiously interfered with its prospective contractual relations. Suzuki contends that Kummer tortiously interfered with its prospective contractual relations with potential dealers by filing a complaint with the OCT--which prevented Suzuki from replacing Kummer as a Suzuki dealer--and then refusing to stock and sell Suzuki motorcycles.
 
 
 35
 There was no evidence, however, that Kummer's actions were intended to prevent Suzuki from entering into contractual relations with third parties. And to maintain a cause of action for tortious interference with prospective contractual relations "the defendant must act with a purpose to interfere with the contract. If the actor does not have this purpose, his conduct does not subject him to liability even if it has the unintended effect of deterring the third person from dealing with the other." Cudd v. Crownhart, 122 Wis.2d 656, 364 N.W.2d 158, 160 (App.1985). In fact, there was no evidence that Suzuki even attempted to find or appoint another dealer, much less that Kummer interfered with Suzuki's attempts to do so. We, therefore, agree with the magistrate judge's rejection of Suzuki's tortious interference claim. See Chuck Wagon Catering, Inc. v. Raduege, 88 Wis.2d 740, 277 N.W.2d 787, 793-94 (1979) (holding that there was no cause of action for intentional inference with contract where there was no evidence adduced at trial that in any way indicated that the defendant's actions affected either of the prospective contracting parties).
 
 B. Kummer's Cross-Appeal
 
 36
 1. Breach of contract.
 
 
 37
 On cross-appeal, Kummer asserts that he is appealing the magistrate judge's holding that Suzuki did not breach the Dealer Agreement. Kummer's opening brief is scant on this issue, as was his reply brief and argument, and we had a difficult time assessing the breaches Kummer is claiming. Kummer appears to argue that Suzuki breached the Dealer Agreement by failing to personally visit Kummer's store. But the Dealer Agreement does not require Suzuki to send personal representatives to dealer stores. Kummer also speaks of the duties of good faith and cooperation. Both are contractual duties. Kolb v. Chrysler Corp., 661 F.2d 1137, 1142 n. 5 (7th Cir.1981) ("Of course, this duty of good faith performance would also be imposed on [the motor vehicle manufacturer] under settled principles of contract interpretation.") But we cannot say that the court was clearly erroneous in finding that Suzuki's failure to personally visit Kummer's store did not constitute a breach of the duty of good faith and cooperation, especially where Suzuki continued to contact Kummer by phone and where there was no need for personal visits after Kummer disposed of his last Suzuki in 1990.
 
 
 38
 2. Violation of the Wisconsin Motor Vehicle Dealer Act.
 
 
 39
 Kummer also contends that he is entitled to treble damages because Suzuki violated section 218.01(2)(bd)2 of the Wisconsin Motor Vehicle Dealer Act by breaching the Dealer Agreement. But as discussed above, Suzuki did not breach the Dealer Agreement. There was therefore no violation of section 218.01(2)(bd)2, and accordingly there is no violation to support an award of treble damages under section 218.01(9)(am) of the Wisconsin Motor Vehicle Dealer law.
 
 
 40
 3. Wrongful termination.
 
 
 41
 Kummer's final argument on cross-appeal is that the magistrate judge erred in holding that Suzuki's January 21, 1993 termination of Kummer's dealership did not violate section 218.01(3)(a)17 of the Wisconsin Motor Vehicle Dealer law.[6] Section 218.01(3)(a)17 of the Wisconsin Motor Vehicle Dealer law protects dealers from unfair termination by proscribing as unlawful:
 
 
 42
 Being a manufacturer, ... who has unfairly, without due regard to the equities ... canceled or failed to renew the franchise of any motor vehicle dealer; or being a manufacturer, ... who unfairly, without due regard to the equities of a distributor or without just provocation canceled or failed to renew the franchise of any distributor.
 
 
 43
 Kummer contends that Suzuki's termination violated section 218.01(3)(a)17 because it was "without just provocation," "unfair," and "without due regard to the equities of the dealer."
 
 
 44
 "Just provocation" to terminate a dealership exists if "there have been several substantial and material breaches of the contract provisions under which the dealership was franchised." Nagle Motors v. Volkswagen North Central Distrib., Inc., 51 Wis.2d 413, 187 N.W.2d 374, 385 (1971). Adopted by statute 218.01(3)(a)(17). Kummer claims that the district court erred in finding that there was "just provocation" because the district court also found that there was no breach of contract. Kummer is correct that the magistrate judge's rulings were inconsistent; if Kummer did not breach the Dealer Agreement, there was no just provocation for the termination of his dealership. But as discussed above, the magistrate judge erred in finding that Kummer had not breached the Dealer Agreement. Kummer clearly breached the Dealer Agreement by failing to stock and sell Suzuki motorcycles during the mandatory stay period. This breach went to the heart of the Dealer Agreement, and was thus "substantial and material." Accordingly, Suzuki had "just provocation" to terminate Kummer's Dealer Agreement.
 
 
 45
 Kummer next contends that Suzuki's termination was "without due regard to the equities of the dealer." " '[D]ue regard to the equities' " "as used in the statute relates to whether the provisions breached were reasonable and whether the distributor was just and fair in enforcing the terms of the contract." Nagle, 187 N.W.2d at 385. In this case, the contractual term Suzuki sought to enforce required Kummer to use his best efforts to sell Suzuki products. This contractual provision is not unreasonable, and Kummer does not contend that it was. Rather, Kummer argues that, by enforcing this provision, Suzuki was not "just and fair in enforcing the terms of the contract." Specifically, Kummer claims that it was neither just nor fair to wait until the OCT issued its proposed decision in favor of Kummer before notifying Kummer of its intent to terminate the dealership.
 
 
 46
 It is true that Suzuki did not send a notice of termination based on Kummer's failure to continue to perform under the Dealer Agreement until it received notice of the OCT's unfavorable decision. But the evidence also established that this was not based on some deleterious motive. Rather, the record establishes that when Kummer stopped performing under the Dealer Agreement, Suzuki attempted to secure Kummer's performance by sending Kummer numerous letters demanding that Kummer perform pending the OCT resolution. When Kummer still refused to perform, Suzuki informed the OCT of Kummer's nonperformance and argued before the OCT that Kummer's continued failure to stock and sell Suzuki motorcycles justified Kummer's termination as a dealer. The OCT, however, refused to consider any of Kummer's behavior following the December 1988 notice of termination. Until the OCT issued its proposed decision stating as much, Suzuki had no reason to implement separate termination proceedings. It reasonably believed that the OCT would consider Kummer's post-1988 non-performance in ruling on the validity of Kummer's termination. There is nothing unfair or unjust in terminating a dealer under these circumstances. Nor was it arbitrary, capricious or vengeful. Accordingly, Suzuki's termination of Kummer as a dealer was proper under the Wisconsin Motor Vehicle Dealer law.
 
 III. Conclusion
 
 47
 When Kummer instituted proceedings before the OCT, the Wisconsin Motor Vehicle Dealer law required both Suzuki and Kummer to continue to perform under the Dealer Agreement. Suzuki did so, but Kummer did not. Suzuki was thus entitled to damages for Kummer's failure to perform during this period. This breach of contract also entitled Suzuki to terminate Kummer's dealership. Kummer's failure to continue under the Dealer Agreement also constituted a violation of the Wisconsin Motor Vehicle Dealer law, entitling Suzuki to treble damages. Suzuki, however, has not demonstrated that Kummer tortiously interfered with Suzuki's prospective business relations. Nor has Kummer shown that Suzuki breached the Dealer Agreement or violated the Wisconsin Motor Vehicle Dealer act. For these and the foregoing reasons, we affirm in part, reverse in part and remand with instructions for the court to enter judgment on liability for Suzuki on its breach of contract and Wisconsin Motor Vehicle Dealer Act claim and to determine damages. These damages, however, may well prove to be minimal since the parties never agreed to a minimum sales volume and since demand for some Suzuki products exceeded supply, limiting the amount of lost profits. Additionally, on remand the court should consider whether Suzuki should have mitigated damages by seeking to appoint an alternative Suzuki dealer.
 
 
 
 *
 Hon. William D. Stiehl, of the Southern District of Illinois, sitting by designation
 
 
 [1]
 Suzuki later amended its complaint to include a claim against William Kummer, individually, as guarantor for Bill Kummer, Inc. The district court granted Suzuki summary judgment on this claim, finding that Kummer would be personally liable pursuant to the guaranty for any judgment issued in favor of Suzuki. This determination is not an issue on appeal
 
 
 [2]
 In his counterclaim, Kummer also sought reasonable costs and attorney's fees arising from the hearing before the OCT concerning Suzuki's wrongful termination of Kummer's dealership in December of 1988. The district court granted Kummer's motion for summary judgment on this claim and this is not an issue on appeal
 
 
 [3]
 Kummer asked the district court to abstain from this case while the matter was pending before the OCT. The district court denied this motion and the OCT, instead, adjourned, pending the resolution of this case
 
 
 [4]
 There are two additional reasons why we must conclude that the court erred in finding that Kummer was not required to perform under the Dealer Agreement during the automatic stay period. First of all, even if Suzuki and Kummer's behavior could be interpreted as a waiver under 2-209(4), Suzuki's continuous demand that Kummer perform under the contract would constitute a retraction of the waiver pursuant to 2-209(5), requiring Kummer to perform. Secondly, even if Kummer and Suzuki had attempted to modify the Dealer Agreement, pursuant to section 218.01(2)(bm) of the Wisconsin Automobile Dealer Act an agreement to suspend the Dealer Agreement, pending termination, would be void. Section 218.01(2)(bm) provides that "provisions of an agreement which do any of the following are void and prohibited: a. Waive a remedy or defense available to a distributor or dealer or other provision protecting the interests of a distributor or dealer under this section...." The continuation of a Dealer Agreement during the pendency of an OCT hearing is a provision intended to protect the interests of a dealer. But see 218.01(2)(bo) (allowing the voluntary waiver of rights pursuant to a settlement agreement)
 
 
 [5]
 Kummer admitted in his answer that Suzuki is a licensee within the meaning of section 218.01
 
 
 [6]
 At this point, we again emphasize that the propriety of Suzuki's December, 1988 termination is not an issue before this court. That termination was held to be wrongful by the OCT and Kummer has been compensated pursuant to the Wisconsin Motor Vehicle Dealer Act for the improper termination. Here, the issue solely concerns the January 21, 1993 termination