89 F.3d 838
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Anthony O. LONGSTREET, Sr., Plaintiff-Appellant,
v.
Rick BELTON, Defendant-Appellee.
 No. 95-1906.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 17, 1996.*
Decided June 26, 1996.
 
 Before POSNER, Chief Judge, and PELL and EVANS, Circuit Judges.
 
 ORDER
 
 1
 Anthony Longstreet, an inmate formerly housed at Menard Correctional Center, sued Correctional Officer Rick Belton under 42 U.S.C. § 1983 for allegedly violating Longstreet's Eighth Amendment right to be safe from assault by other prison inmates. The case was submitted for disposition to a magistrate judge pursuant to 28 U.S.C. § 636(c). (Although there is no consent to proceed before a magistrate judge in the record, Longstreet has informed the court that he did agree). Following a bench trial, the magistrate judge denied relief finding that the evidence was inconclusive as to the cause of the fight, therefore Belton could not have foreseen Longstreet's danger. We review the magistrate's findings of fact under a clearly erroneous standard and the conclusions of law de novo. American Suzuki Motor Corp. v. Bill Kummer, Inc., 65 F.3d 1381, 1385 (7th Cir.1995); Selan v. Kiley, 969 F.2d 560, 567 (7th Cir.1992).
 
 
 2
 On the morning of December 7, 1991, Longstreet was escorted from his cell in the segregation unit to an exercise yard. The record does not show if Longstreet was in segregation for disciplinary purposes or for his own protection. The prison has three exercise yards for inmates in segregation and Longstreet testified that he did not know to which exercise yard he was assigned until he arrived at the middle yard. Before leaving his cell, Longstreet had the option to refuse his exercise privileges without being subject to discipline. Belton was the correctional officer charged with the responsibility of admitting prisoners into the middle yard. When Longstreet approached Belton for admittance, he noticed members of a gang that had threatened him exercising in the middle yard and requested that Belton admit him into a different yard, telling Belton that gang members in that yard wanted to fight him. Belton gave Longstreet a choice: Longstreet could refuse his exercise privileges, for which he would be subject to discipline of loss of recreational privileges, or enter the middle yard.
 
 
 3
 Longstreet opted to enter the middle yard. He moved toward the basketball court and soon was engaged in an argument with four gang-affiliated inmates. During the encounter, Longstreet's back was to Belton. Longstreet testified that he spoke loudly to notify Belton of his predicament but did not cry out for Belton's help or move closer to Belton. Belton was ten to seven feet away from Longstreet so Longstreet believed that Belton heard him.
 
 
 4
 Belton testified that he heard Longstreet shouting and pointing, but did not hear the content of the argument. While Longstreet was engaged by these inmates, another inmate associated with the same gang as the first four inmates struck Longstreet from behind. The five inmates allegedly then continued to hit Longstreet, until, as Louis Hamilton testified, Longstreet was "beat ... down to the ground." Belton testified that he watched Longstreet and that Longstreet "did not get touched," but removed Longstreet from the yard because Longstreet was the "center of the argument." Longstreet later ate lunch, finished his day, but later that night, around dinner time, felt pain in his jaw and was diagnosed with having a broken jaw.
 
 
 5
 A prison official has the duty under the Eighth Amendment to ensure a prisoner's "reasonable safety." Farmer v. Brennan, 114 S.Ct. 1970, 1983 (1994). This means that the official must "take reasonable measures to guarantee the safety of the inmates" from attack at the hands of other inmates. Id. at 1976 (quoting Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 3200 (1984)). This rule acknowledges the state's role in stripping the inmate of his natural means of self-defense by incarcerating him, and recognizes that prison beatings serve no legitimate penological objective. A prison official may be held liable for not protecting an inmate if the official shows deliberate indifference to a substantial risk of serious harm to that inmate. Id. at 1977; see also Haley v. Gross. No. 95-1130, slip op. (7th Cir. May 29, 1996).
 
 
 6
 The magistrate judge found that Longstreet's broken jaw and testimony that Longstreet was beaten demonstrated that Longstreet suffered a sufficiently serious deprivation for Eighth Amendment purposes. The magistrate judge then credited Longstreet's testimony over Belton's in finding that Longstreet had warned Belton that he may be assaulted if he entered the middle yard. Thus, Belton was subjectively aware of the risk of imminent harm to Longstreet. The magistrate judge further found that Belton observed Longstreet arguing with the other inmates. However, the magistrate judge then held that Belton did not know that the possible harm would be a serious harm.
 
 
 7
 Deliberate indifference entails a criminally reckless disregard for an inmate's safety. Antonelli v. Sheahan, 81 F.3d 1422, 1427 (7th Cir.1996); Howard v. Grinage, 82 F.3d 1343, 1352 (6th Cir.1996). The official "must both be aware of facts from which the inference could be drawn that a substantial risk exists, and he must also draw the inference." Farmer, at 1979. Thus, the official must have actual knowledge of a substantial risk of serious harm to the inmate. This knowledge may be inferred from the conspicuous nature of the risk. Haley, supra. We recently illustrated this rule in the "cobra analogy."
 
 
 8
 If prison officials placed an inmate in a cell that has a cobra, but they do not know that there is a cobra there (or even that there is a high probability that there is a cobra there), they are not guilty of deliberate indifference, even if they should have known about the risk, that is, even if they were negligent--even grossly negligent or even reckless in the tort sense--in failing to know. But if they know that there is a cobra there or at least that there is a high probability of a cobra there, and do nothing, that is deliberate indifference.
 
 
 9
 Billman v. Indiana Department of Corrections, 56 F.3d 785, 788 (7th Cir.1995). According to Longstreet, the situation presented in this case is slightly different; extending the cobra analogy here, Belton knew that Longstreet's cell housed a snake but did not know if the snake was a garden snake or a cobra, and did not know (or investigate) the chances that the snake was a cobra.
 
 
 10
 But this characterization does not fully describe Belton's subjective state of mind because Longstreet knew the relative risks of entering the recreation yard, and, when faced with the option of refusing his exercise priviledges, choose to accept those risks. Thus, Belton could judge the risk of assault based on Longstreet's choice whether or not to enter the exercise yard. Belton was free to assume that the risk to Longstreet was not that great because Longstreet chose to enter the yard, and thus Belton was not subjectively aware that Longstreet faced a great risk of immediate harm. For this reason, Belton did not demonstrate deliberate indifference towards Longstreet's circumstance.
 
 
 11
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. See Fed.R.App.P. 34(a); Cir.R. 34(f)