**NATIONAL FOOTBALL LEAGUE PROPERTIES, INC. and GREEN BAY PACKERS, INC., Plaintiffs,**

v.

**PROSTYLE, INC. and Sheri Tanner, Individually, Defendants.**

No. 96–C–1404.

United States District Court, E.D. Wisconsin.

Nov. 24, 1998.

Howard A. Pollack, Daniel T. Flaherty, Robert L. Raskopf, Milwaukee, WI, for Plaintiffs.

John P. Fredrickson, Milwaukee, WI, for Defendants.

## ORDER

STADTMUELLER, Chief Judge.

### I. OVERVIEW

Plaintiffs, National Football League Properties, Inc. and Green Bay Packers, Inc., filed this action against defendants ProStyle, Inc. and Sheri Tanner. In their complaint, plaintiffs presented six counts for which they claimed relief: federal unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); federal trademark infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); federal dilution under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); deceptive advertising law under Wis. Stat. § 100.18(1); common law unfair competition; common law trademark infringement; misappropriation of trade secrets under Wis. Stat. § 134.90; and common law misappropriation of trade secrets. Plaintiffs sought a temporary restraining order and preliminary and permanent injunctions restraining defendants' use of plaintiffs' marks and ordering destruction of infringing materials, as well as damages, including treble damages for willful and deliberate infringement under the Lanham Act, double damages under Wis. Stat. § 100.18(1), and punitive damages under Wis. Stat. § 134.90(4).

On December 30, 1996, the court held a hearing on the motion for a temporary restraining order, and on January 2, 1997, the court denied the motion. On July 25, 1997, the court granted partial summary judgment for defendants on plaintiffs' claims of federal unfair competition, federal trademark infringement, state unfair competition, and state trademark infringement to the extent these claims were based upon unregistered common law trademarks. The court denied summary judgment for defendants on these claims to the extent they were based upon plaintiffs' registered trademarks. The court also granted summary judgment for defendants on plaintiffs' deceptive advertising claim under Wis. Stat. § 100.18(1). On May 19, 1998, the court denied plaintiffs' motion for reconsideration of that decision.

On July 31, 1998, the court denied in part and granted in part each side's mo-

tions in limine. *See National Football League Properties, Inc. v. ProStyle, Inc.,* 16 F.Supp.2d 1012 (E.D.Wis.1998). Regarding plaintiffs' motion in limine to exclude evidence of defendant Sheri Tanner's sex discrimination action, the court held that evidence of this action "only could be admissible through defendants' counterclaim alleging intentional interference with its prospective business relations, because plaintiffs' possible improper motive is an element of that claim." 16 F.Supp.2d at 1021. The court thus postponed ruling on this motion until it considered the viability of this counterclaim:

> Because plaintiffs have expressed their intent to move for summary judgment on defendants' counterclaim alleging intentional interference with their prospective business relations, the court feels that it would be premature to rule on plaintiffs' motion to exclude evidence of Tanner's sex discrimination action, as the issue would be mooted if the court grants plaintiffs' motion for summary judgment on that counterclaim. If defendants' counterclaim survives summary judgment, the court may rule on this motion in limine then.

*Id.* Plaintiffs now move for summary judgment on defendants' counterclaim for tortious interference with their prospective business relations and move in limine once again for the exclusion of evidence of Tanner's sex discrimination action.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. *See, e.g., Fisher v. Transco Servs. Milwaukee, Inc.,* 979

F.2d 1239, 1242 (7th Cir.1992). With respect to the nonmoving party's burden, the Federal Rules of Civil Procedure provide that

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

### B. Defendants' Counterclaim

Defendants have counterclaimed for tortious interference with prospective business relations, claiming that plaintiffs tortiously interfered with defendants' prospective business relations with J.C. Penney, thus causing J.C. Penney to fail to carry defendants' merchandise for the fall of 1997.

█ Plaintiffs allege that to establish a cause of action for tortious interference with prospective business relations under Wisconsin law, defendants must prove the following:

(1) that the [defendants] had a valid expectancy of a future contractual relationship with a third party;

(2) that the [plaintiffs] induced the third party not to enter into or continue prospective business relations with the [defendants];

(3) that the [plaintiffs] acted intentionally, that is, with a prime purpose to interfere with the [defendants'] prospective business relationship, or in such a fashion and for such purpose that the [plaintiffs] knew that the interference was certain, or substantially certain, to occur; and

(4) that the [plaintiffs'] conduct was a substantial factor in producing the damages claimed by the [defendants].

Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment and Renewed Motion in Limine to Exclude Evidence of Sheri Tanner's Sexual Discrimination Action at 10–11 (citing *Federal Pants, Inc. v. Stocking*, 762 F.2d 561, 568–69 (7th Cir.1985), and *Cudd v. Crownhart*, 122 Wis.2d 656, 364 N.W.2d 158, 160–61 (Ct.App.1985)). Although the *Federal Pants* and *Cudd* courts characterized the elements of this tort somewhat differently, defendants "agree with the four elements of a *prima facie* claim for tortious interference." Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment and Renewed Motion in Limine at 2. Thus, the court will apply the elements as listed above.

Defendants vigorously dispute the first and third elements listed above, and there may be genuine issues of fact in dispute relating to those elements. However, defendants have produced very little evidence regarding the second and fourth elements. The sum total of defendants' response regarding the second element consists of the following:

> ProStyle concedes that it has been unable to identify any improper action by the plaintiffs or J.C. Penney prior to the filing of this action. But the mere filing of this action caused J.C. Penney store personnel to question whether they should pull ProStyle merchandise. (Hansen [sic] Dep. pp. 46–49; Fredrickson Dec. Ex. C). After several of J.C. Penney personnel were dragged directly into this litigation by deposition (including representation by corporate counsel), J.C. Penney stores were no longer authorized to purchase ProStyle merchandise for the fall 1997 selling season. (Stephenson Dep., pp. 31–32; Fredrickson Dec. Ex. B) Given the fact that Meredith Schuermann testified that the only potential obstacle to continued sales of ProStyle merchandise to J.C. Penney

was meeting the Legal Department's requirements (Schuermann Dep., p. 79; Frederickson Dec. Ex. A), the fair inference that follows is that J.C. Penney has prohibited further purchases from ProStyle as a result of the pending litigation. Defendants' Response at 4.

Defendants' citation to the Jeannette Hanson Deposition in the second sentence quoted above refers to concerns expressed by the women's merchandiser at a single J.C. Penney store about whether he should pull the ProStyle merchandise because of this suit. (Hanson responded that she had not been told anything about the suit by the home office and that the women's merchandiser should do what he thought was right.) In the third sentence quoted above, defendants misleadingly attempt to draw a connection between this suit and J.C. Penney's decision not to carry ProStyle merchandise; however, Jack Stephenson did not draw any such connection, but merely testified in his deposition that J.C. Penney would not carry ProStyle merchandise for the fall season. Finally, the reference to Schuermann's deposition is merely her answer to the question whether the accusation of infringement would affect her decision to reorder ProStyle merchandise. She answered that it would *not* affect her decision and that she would only base her buying recommendations on rate of sale, "provided [the merchandise] meets all J.C. Penney's legal department's requirements."

█ Even viewing the facts in the light most favorable to defendants, this is hardly the concrete evidence of plaintiffs' inducement of J.C. Penney not to continue business relations with defendants needed to survive summary judgment. As plaintiffs point out, there is no evidence that plaintiffs ever even suggested to J.C. Penney that it should not carry defendants' merchandise. Furthermore, it appears that Sheri Tanner, not plaintiffs, informed J.C. Penney of the lawsuit, and that Kay Tanner voluntarily withheld at least one shipment of ProStyle merchandise to J.C.

Penney in May 1997, long after this suit was filed, because of infringement concerns. The court thus holds that there is no genuine issue of material fact regarding this element of defendants' counterclaim.

Defendants' showing regarding the fourth element, causation, is even weaker:

As explained above, somewhere between the March 27, 1997 district meeting at which Meredith Schuermann recommended to J.C. Penney buyers to purchase ProStyle merchandise for the fall of 1997 and Jack Stephenson's June 6, 1997 deposition (during which period plaintiffs began taking depositions of J.C. Penney personnel), J.C. Penney withdrew authorization for stores to make any further purchases of ProStyle merchandise, which resulted in no further sales to J.C. Penney. Viewed in a light most favorable to ProStyle, the record suggests a finding that but for plaintiffs' conduct in filing and pursuing this litigation, ProStyle would have received additional orders from J.C. Penney.

Defendants' response at 5. Essentially, defendants' argument is that a lawsuit was filed and that J.C. Penney, at some later point in time, discontinued carrying defendants' products, which somehow makes those events related. This is not sufficient evidence of causation to survive summary judgment.

Furthermore, the court doubts that defendants would have a viable cause of action even if they had indisputable proof that J.C. Penney stopped carrying ProStyle merchandise solely as a result of this lawsuit. In *Cudd*, the court reversed the judgment against the alleged tortfeasor, holding that "[a]s the Restatement makes clear, a party has a right to protect what he believes to be his legal interest." 122 Wis.2d at 662, 364 N.W.2d 158. The *Cudd* court further held that even if the alleged tortfeasor's legal claim is "ultimately incorrect, liability should nevertheless not be imposed on that lone factor." 122 Wis.2d at 662, 364 N.W.2d 158. Although plaintiffs might not ultimately prevail on their claims, their suit is simply not the sort of frivolous and malicious action that could ever support, by itself, a claim of tortious interference with prospective business relations. The mere fact that a number of plaintiffs' claims survived summary judgment counsel against such a finding.

### III. CONCLUSION

For all these reasons, the court will grant plaintiffs' motion for partial summary judgment on defendants' counterclaim of tortious interference with prospective business relations. Because evidence of Sheri Tanner's sex discrimination action could only be relevant to this counterclaim, as the court held in its July 31, 1998 order, the court also will grant plaintiffs' renewed motion in limine to exclude this evidence.

Accordingly,

**IT IS ORDERED** that plaintiffs' motion for partial summary judgment be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that plaintiffs' renewed motion in limine to exclude evidence of Sheri Tanner's sexual discrimination action be and the same is hereby **GRANTED**.