**CONAGRA, INC., Appellant,**

v.

**GEORGE A. HORMEL, & COMPANY, Appellee.**

**No. 92–1298.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 9, 1992.

Decided March 31, 1993.

John Passarelli, Omaha, NE, argued (Michael Mullin, and Patrick Stephenson on the brief), for appellant.

Hugh Latimer, Washington, DC, argued (Robert Rossiter, Jr., Fraser Vaughn, Omaha, NE, John Alex, Daniel Pastrik, Chicago, IL, Kevin C. Jones, Austin, MN, on the brief), for appellee.

Before FAGG, BEAM, and HANSEN, Circuit Judges.

FAGG, Circuit Judge.

ConAgra, Inc., sells nutritious food products under its registered trademark "Healthy Choice." Following great success in the frozen entree market, ConAgra began to develop a line of shelf-stable food products to be sold in microwaveable cups. When George A. Hormel, & Company began test-marketing a line of similar products under the trademark "Health Selections," ConAgra brought this trademark infringement action under 15 U.S.C. § 1114(1) against Hormel. Following a bench trial, the district court found Hormel had not infringed ConAgra's trademark. *ConAgra, Inc. v. Geo. A. Hormel & Co.*, 784 F.Supp. 700, 737 (D.Neb.1992). ConAgra appeals and we affirm.

To succeed on the merits of its trademark infringement claim, ConAgra must show Hormel's use of the trademark Health Selections creates a likelihood of confusion among consumers about product source. *See General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 626 (8th Cir.1987). When assessing the likelihood of confusion, courts consider all the circumstances, which include relevant factors like the established trademark's strength (marketplace recognition value), the similarity of the marks, the competitive closeness of the products on which the marks are placed, the alleged infringer's intent to pass off its

goods as those of the trademark holder, incidents of actual consumer confusion, and the degree of care the trademark holder's potential customers are likely to exercise. *Id.; Mutual of Omaha Ins. Co. v. Novak,* 836 F.2d 397, 399 & n. 3 (8th Cir.1987), *cert. denied,* 488 U.S. 933, 109 S.Ct. 326, 102 L.Ed.2d 344 (1988); *see also SquirtCo v. Seven–Up Co.,* 628 F.2d 1086, 1091 (8th Cir.1980).

In a thorough and detailed opinion, the district court analyzed each of these factors. The district court found the Healthy Choice mark is relatively weak because it is more descriptive than suggestive, 784 F.Supp. at 712, and the mark is not strong in the shelf-stable market, *id.* at 714–15. As for the similarity of the Healthy Choice and Health Selections marks, the district court found the trade dress (visual image presented to customers) is not confusingly similar and the marks sound significantly different, but the marks mean essentially the same thing. *Id.* at 716–17. The district court also found the products directly compete, *id.* at 717, Hormel did not intend to confuse the public with its mark, *id.* at 719, 722, actual consumer confusion is fairly small and not caused by trademark relevant reasons, *id.* at 735–36, and although "the price of the goods involved suggests that consumers will not exercise a high degree of care, they will also not be whimsical in their purchases either," *id.* at 736. After weighing these factors, the district court found there was no likelihood of confusion in the shelf-stable market. *Id.* at 736–37.

■ ConAgra first attacks the district court's findings on some of the factors. ConAgra asserts that in considering the strength of the Healthy Choice mark, the district court committed clear error in finding the mark is descriptive of ConAgra's food products and is thus entitled to less protection from infringement. *See id.* at 706–12. ConAgra also asserts the district court committed clear error in finding Hormel did not intend to trade on ConAgra's goodwill in its Healthy Choice mark. *See id.* at 718–22. We have carefully reviewed the district court's detailed reasons for

these findings and conclude the findings are not clearly erroneous.

■ ConAgra next contends that in discounting the surveys showing some actual consumer confusion, the district court improperly isolated the marks and other features of trade dress and improperly found most of the confusion was not trademark relevant. *See id.* at 734–36. We disagree. "[S]urveys can be used to show actual confusion, but their evidentiary value depends on the relevance of the questions asked and the technical adequacy of the survey procedures." *Coherent, Inc. v. Coherent Technologies, Inc.,* 935 F.2d 1122, 1126 (10th Cir.1991); *see SquirtCo,* 628 F.2d at 1091. Here, the district court found the surveys were technically flawed and thus gave the results less evidentiary weight. *See* 784 F.Supp. at 725, 728, 731, 734. Although the surveys may have shown some actual consumer confusion, the district court acted within its discretion in reviewing the survey evidence and methodology and deciding to discount the survey results. *See Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.,* 824 F.2d 665, 669 n. 4 (8th Cir.1987).

ConAgra also contends the district court committed error in weighing the factors. Specifically, ConAgra asserts the findings that the marks are identical in meaning and used on directly competitive inexpensive consumer food products mandated a finding that confusion is likely. ConAgra also asserts the district court overemphasized the weakness of ConAgra's mark. Before we can address the merits of these assertions, we must decide our standard of review. ConAgra contends that although "the district court's evaluation of each factor is subject to the clearly erroneous standard of review, the ultimate determination of the likelihood of confusion is a question of law [that] we review *de novo*." *Life Technologies, Inc. v. Gibbco Scientific, Inc.,* 826 F.2d 775, 777 (8th Cir.1987) (citing *Kwik–Site Corp. v. Clear View Mfg. Co.,* 758 F.2d 167, 178 (6th Cir.1985)). We disagree.

■ Notwithstanding our statement in *Life Technologies,* every other Eighth Cir-

cuit case deciding the issue both before and after *Life Technologies* states the likelihood of confusion is a factual question that we review for clear error. *See, e.g., Novak,* 836 F.2d at 398–99; *SquirtCo,* 628 F.2d at 1091. Although likelihood of confusion is a legal conclusion reviewable de novo in a few circuits, *Braun Inc. v. Dynamics Corp. of Am.,* 975 F.2d 815, 825 (Fed.Cir.1992); *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.,* 973 F.2d 1033, 1043 (2d Cir.1992); *Esercizio v. Roberts,* 944 F.2d 1235, 1242 (6th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 3028, 120 L.Ed.2d 899 (1992), most circuits hold it is a factual finding reviewable only for clear error, *Moore Business Forms, Inc. v. Ryu,* 960 F.2d 486, 489 (5th Cir.1992); *Amoco Oil Co. v. Rainbow Snow, Inc.,* 809 F.2d 656, 661 (10th Cir.1987); *E. Remy Martin & Co. v. Shaw–Ross Int'l Imports, Inc.,* 756 F.2d 1525, 1529 (11th Cir.1985); *Hyatt Corp. v. Hyatt Legal Servs.,* 736 F.2d 1153, 1156 (7th Cir.), *cert. denied,* 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 361 (1984); *Purolator, Inc. v. EFRA Distribs., Inc.,* 687 F.2d 554, 559 (1st Cir.1982); *see also E. & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280, 1290 (9th Cir.1992) (mixed question reviewable for clear error). Because the *Life Technologies* panel lacked power to disregard the *SquirtCo* panel's precedent and this panel similarly lacks that power, *Drake v. Scott,* 812 F.2d 395, 400 (8th Cir.), *cert. denied,* 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987), we conclude we must review the district court's decision on likelihood of confusion for clear error. *See SquirtCo,* 628 F.2d at 1091.

■ We now turn to the merits of ConAgra's argument. In deciding whether there is a likelihood of confusion, "[e]ach factor must be considered and excessive weight should not be given to any one factor to the exclusion of others." · *Life Technologies,* 826 F.2d at 776; *see also General Mills,* 824 F.2d at 626. ConAgra correctly points out that it need not prove intent or actual confusion, and when "products are closely related, less similarity in trademarks is necessary to support a finding of infringement." *SquirtCo,* 628 F.2d at 1091. ConAgra also identifies many cases holding

word marks are confusingly similar when the marks convey the same or a similar meaning to purchasers. *E.g., American Home Prods. Corp. v. Johnson Chem. Co.,* 589 F.2d 103, 107 & n. 4 (2d Cir.1978) (Roach Inn and Roach Motel for roach traps); *Hancock v. American Steel & Wire Co.,* 203 F.2d 737, 740–41 (C.C.P.A. 1953) (Cyclone and Tornado for chain link fencing). These cases, however, do not mandate a finding that confusion is likely in this case. Each case turns on its own unique facts. Indeed, other cases hold word marks are not confusingly similar when they convey the same or a similar meaning, *e.g., Claremont Polychemical Corp. v. Atlantic Powdered Metals, Inc.,* 470 F.2d 636, 637 (C.C.P.A.1972) (Evergold for metal powder and Duragold for bronze pigment); *Gravel Cologne, Inc. v. Lawrence Palmer, Inc.,* 469 F.2d 1397, 1398 (C.C.P.A.1972) (Gravel and On the Rocks for men's cologne), or even use identical words, *e.g., Comidas Exquisitos, Inc. v. O'Malley & McGee's, Inc.,* 775 F.2d 260 (8th Cir.1985) (Carlos McGee's and Carlos McGee's for restaurants). Further, we have stated that the use of dominant identical words in common does not mean that two marks are similar. *General Mills,* 824 F.2d at 627.

In this case, the district court considered each factor without placing exceptional significance on any one factor. *See* 784 F.Supp. at 736–37. Because we are satisfied the district court properly weighed the factors, we conclude the district court's finding that there is no likelihood of confusion is not clearly erroneous. Indeed, we would reach the same result if we reviewed the likelihood of confusion de novo.

ConAgra finally asserts Hormel's trademark registration is void because Hormel applied for the Health Selections trademark based on initial sales that were a sham. *See* 15 U.S.C. § 1051(a)(1)(A) (1988) (federal trademark registration must be based on an earlier use of the mark in commerce); *id.* § 1127 (defining "use in commerce" as requiring sale of goods in commerce). The district court found Hormel's application was not based on a "sham

use." 784 F.Supp. at 706 n. 4. This finding is not clearly erroneous. *See Ralston Purina Co. v. On–Cor Frozen Foods, Inc.,* 746 F.2d 801, 804–05 & n. 6 (Fed.Cir.1984); 1 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 19:37, at 969–72 (2d ed. 1984).

Accordingly, we affirm the district court's careful, well-reasoned opinion.