NATIONAL FOOTBALL LEAGUE PROPERTIES, INC. and Green Bay Packers, Inc., Plaintiffs,

v.

PROSTYLE, INC. and Sheri Tanner, Individually, Defendants.

No. 96–C–1404.

United States District Court, E.D. Wisconsin.

July 31, 1998.

---

Robert L. Raskopf, Carol A. Witschel, White & Case, L.L.P., New York, NY, Howard A. Pollack, Daniel T. Flaherty, Godfrey & Kahn, S.C ., Milwaukee, WI, for Plaintiffs.

John P. Fredrickson, Nilles & Nilles, S.C., Milwaukee, WI, for Defendants.

## ORDER

STADTMUELLER, Chief Judge.

### I. OVERVIEW

Plaintiffs National Football League Properties, Inc. and Green Bay Packers, Inc. accuse defendants ProStyle, Inc. and Sheri Tanner of unlawfully capitalizing on the Packers' recent success by selling unauthorized Packer-related merchandise. In their complaint, plaintiffs present six counts for which they claim relief: federal unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); federal trademark infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); federal dilution under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); deceptive advertising law under Wis. Stat. § 100.18(1); common law unfair competition; common law trademark infringement; misappropriation of trade secrets under Wis. Stat. § 134.90; and common law misappropriation of trade secrets. Plaintiffs sought a temporary restraining order and preliminary and permanent injunctions restraining defendants' use of plaintiffs' marks and ordering destruction of infringing materials, as well as damages, including treble damages for willful and deliberate infringement under the Lanham Act, double damages under Wis. Stat. § 100.18(1), and punitive damages under Wis. Stat. § 134.90(4).

On December 30, 1996, the court held a hearing on the motion for a temporary restraining order, and on January 2, 1997, the court denied the motion. On July 25, 1997,

the court granted partial summary judgment for defendants on plaintiffs' claims of federal unfair competition, federal trademark infringement, state unfair competition, and state trademark infringement to the extent these claims were based upon unregistered common law trademarks.[1] The court denied summary judgment for defendants on these claims to the extent they were based upon plaintiffs' registered trademarks. The court also granted summary judgment for defendants on plaintiffs' deceptive advertising claim under Wis. Stat. § 100.18(1). On May 19, 1998, the court denied plaintiffs' motion for reconsideration of that decision.

Each side has filed motions in limine. Defendants move in limine for the exclusion of: (1) any evidence of allegedly infringing ProStyle merchandise other than apparel adorned with the phrase "GO PACK GO"; (2) the survey conducted by plaintiffs' expert Jacob Jacoby; (3) opinions by Jacob Jacoby regarding consumer perceptions of any ProStyle merchandise that remains at issue; and (4) evidence regarding paragraph 4(b) of the Standard NFL Player Contract. Plaintiffs move in limine for the exclusion of: (1). any evidence of defendant Sheri Tanner's sex discrimination action; (2) any evidence of third-party uses of Packer trademarks; and (3) argumentation or evidence regarding consumer motivation.

## II. DISCUSSION

### A. DEFENDANTS' MOTION IN LIMINE

#### 1. "GO PACK GO" Evidence

Defendants argue that because the court dismissed plaintiffs' claims regarding plaintiffs' unregistered marks and because the only apparel that plaintiffs have maintained violates plaintiffs' registered marks is that bearing the phrase "GO PACK GO," evidence of all other ProStyle merchandise should be excluded from trial. Plaintiffs respond that they may still argue that the bulk of ProStyle merchandise (1) unfairly competes with plaintiffs' merchandise because of false suggestion of sponsorship, (2) dilutes the value of the registered marks, and (3) infringes plaintiffs' common law rights in the Packers' registered marks. Plaintiffs also respond that they have recently amended their responses to defendants' interrogatories to contend that the bulk of defendants' merchandise infringes[2] plaintiffs' registered marks.

Plaintiffs' unfair competition claims regarding their unregistered marks already have been rejected by the court at the summary judgment stage, and plaintiffs may not argue at trial that defendants' alleged misuse of plaintiffs' unregistered marks is unfair competition because defendants' products falsely suggest sponsorship. As defendants correctly note, the same legal standards govern an unfair competition claim for confusion caused by false suggestion of sponsorship and a claim for trademark infringement, *see, e.g., Smith Fiberglass Prods., Inc. v. Ameron, Inc.,* 7 F.3d 1327 (7th Cir.1993), and this court applied the same standard for unfair competition and trademark infringement in rejecting plaintiffs' claims regarding unregistered marks: "The court will analyze together plaintiffs' claims of federal unfair competi-

1. The court erroneously noted at the end of its July 25, 1997 decision and order that it granted defendants' motion for partial summary judgment regarding Counts I, III, V and VI of the complaint. In fact, Count III, regarding federal dilution, was not discussed by the court anywhere in that decision. The court instead intended to grant defendants' motion for partial summary judgment regarding Counts I, II, V and VI of the complaint, regarding federal unfair competition, federal trademark infringement, state unfair competition, and state trademark infringement.

2. The term "infringe" as used in response to defendants' Interrogatory No. 7 was interpreted by plaintiffs to include " 'infringement' under Sections 32(1), 43(a) and 43(c) of the Lanham Act (respectively, trademark infringement, false and misleading descriptions or representations of origin, and dilution), deceptive advertising under Section 100.18(1) of the Wisconsin Statutes, trademark infringement under state common law and unfair competition under federal statutory law and state common law." Plaintiffs' Responses to Defendants' First Set of Requests for Admission at ¶ 1. Therefore, when the court refers to plaintiffs' new theory that the bulk of defendants' products "infringes" plaintiffs' registered marks, the reader may assume that this also includes the theory that defendants' products dilute and unfairly compete with plaintiffs' registered marks.

tion, federal trademark infringement, state unfair competition, and state trademark infringement, because they all turn upon the same law and facts." July 25, 1997 Decision and Order at 8. Therefore, plaintiffs may not argue at trial that defendants' alleged misuse of plaintiffs' unregistered marks is unfair competition because defendants' products falsely suggest sponsorship.

■ Plaintiffs' second attempt to avoid the effect of the court's prior summary judgment decision involves their recent amendment to their responses to defendants' interrogatories to contend that the bulk of defendants' merchandise infringes plaintiffs' registered marks. Previously, plaintiffs maintained that only the "GO PACK GO" merchandise infringed their registered trademarks, while other merchandise infringed their unregistered marks:

> Defendants' dark green sweatshirt featuring the words "GO PACK GO" in yellow block letters infringes the Packers' registered trademarks GREEN BAY PACKERS, PACKERS and AMERICA'S PACK GREEN BAY, USA and also infringes the Packers' trademark rights in the color combination of green and yellow used in a context indicative of professional football.

> Defendants' dark green sweatshirt featuring the words "DIVISION CHAMPIONS" in block letters with a large yellow stylized "G", depicted in Exhibit B to the Declaration of Sheri Tanner, infringes the Packers' trademark rights in the color combination of green and yellow used with the letter "G" in a context indicative of professional football.

> The following items from Defendants' catalog infringe the Packers' trademark rights in the combination, used in a professional football context, of the colors green and yellow and the geographic mark designation "GREEN BAY" or the numerals worn by Packers' players: 2A, 2B, 2D, 2E, 3D, 5B, 5C, 6A, 6B, 6C, 6F, 6G, 7C, 7D, 8E, 9A, 9B, 9C, 9H, 9I, and 10D. To the

extent that it is possible to ascertain the words imprinted on items 4A, 5A, 7A and 7B, these items are likely to infringe the Packers' trademark rights in the combination, used in a professional football context, of the colors green and yellow and the geographic mark designation "GREEN BAY."

NFLP, Inc.'s Responses to Defendants' First Set of Interrogatories at 9–10.[3] Defendants relied on this response to frame their motion for summary judgment, as shown by the major headings of that motion: "II. NFLP Has Not Established Rights In Any Unregistered 'Marks' or Trade Dress," and "III. No Rational Trier of Fact Could Conclude That ProStyle's 'GO PACK GO' Shirt Is Confusingly Similar to the Packers' Registered Marks." Memorandum In Support of Defendants' Motion for Summary Judgment at 5, 15.

On April 8, 1998, one day after defendants filed the present motion in limine, one day before the final pretrial conference, and just twelve days before this action was set to go to trial, plaintiffs amended the aforementioned interrogatory response to allege that the bulk of defendants' apparel infringed and unfairly competed with the plaintiffs' registered trademarks:[4]

> Defendants' products featuring the words "GO PACK GO" and products bearing the designation "PACK POWER" infringe the Packers' registered trademarks GREEN BAY PACKERS, PACKERS and AMERICA'S PACK GREEN BAY, USA.

> Items 2A, 2B, 2D, 3D, 4B, 5B, 5C, 6A, 6B, 6C, 6F, 6G, 7C, 7D, 8E, and 10D from Defendants' catalog—which bear the designation "GREEN BAY P"—infringe the Packers' trademark rights in the registered trademark GREEN BAY PACKERS.

> Items 9C and 9D from Defendants' catalog—which bear the designation "GREEN BAY FOOTBALL"—infringe the Packers'

---

**3.** NFLP twice supplemented its answers to this interrogatory before defendants' summary judgment motion was decided but did not identify anything other than the "GO PACK GO" shirt as infringing plaintiffs' registered marks.

**4.** Plaintiffs initially served defendants with an unverified Amended Response on April 2, 1998, but did not serve the verified version until April 8.

trademark rights in the registered trademark GREEN BAY PACKERS and the Packers' registered helmet design.

Items 9E and 9F from Defendants' catalog—which bear the designation "KISS MY GRASS GREEN BAY"—and products bearing the designation "GREEN BAY DIVISION CHAMPIONS," "GBP CENTRAL DIVISION CHAMPIONS," "GREEN BAY CHAMPIONS" and "GREEN BAY XXXI CHAMPIONS" infringe the Packers' registered trademark GREEN BAY PACKERS.

Defendants' products featuring the words "DIVISION CHAMPIONS G" infringe the Packers' trademark rights in the registered helmet design.

Items 9A, 9B, 9H, and 9I infringe the Packers' trademark rights in the registered uniform design.

NFLP, Inc.'s Amended Response to Defendants' First Set of Interrogatories at 3–4.[5]

Had this case gone to trial on April 20, 1998, the plaintiffs would have been precluded from amending their interrogatories at this late stage to allege this new theory of recovery. In *Holiday Inns, Inc. v. Robertshaw Controls Co.*, 560 F.2d 856 (7th Cir. 1977), the plaintiff argued on appeal that the trial judge erred by excluding evidence of its alternative theory of recovery. *Id.* at 857. The judge had excluded this theory because the plaintiff had failed to supplement a negative answer to an interrogatory asking about alternative theories of recovery until four days before trial. *Id.* at 857–58. The Seventh Circuit upheld this exclusion, holding that the plaintiff's failure to timely supple-

ment the interrogatory in violation of Fed. R.Civ.P. 26(e) would have unfairly surprised and prejudiced the defendants: "In view of these failures to supplement answers that resulted in the defendants being surprised at trial by plaintiff's alternative theory, we hold that the district judge acted properly in refusing to let the plaintiff present its alternative theory at trial." *Id.* at 858.

Other courts have refused to allow parties to amend interrogatory responses to assert new theories even when trial is not imminent but when discovery has closed and summary judgment motions have been filed. For example, in *Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.*, No. 95 C 0673, 1996 WL 680243, 42 U.S.P.Q.2d 1369 (N.D.Ill. Nov.21, 1996), the court granted the plaintiff's motion in limine to exclude the "best mode" defense of the defendants because the defendants had failed to supplement their interrogatory responses before discovery had concluded. *Id.* The court found that the plaintiff was prejudiced because it would have conducted discovery differently had it known defendants intended to raise that defense, and fact discovery had closed. *Id.* at *9–10; *see also Luddington v. Indiana Bell Tel. Co.*, 796 F.Supp. 1550, 1579 (S.D.Ind. 1990) (denying motion to reconsider regarding court's exclusion of theory not revealed in interrogatory responses until after discovery had closed and summary judgment motion had been filed), *aff'd*, 966 F.2d 225 (7th Cir. 1992); *Powell v. Storz Opthalmics, Inc.*, No. 93–1204–CIV–T–21C, 1995 WL 420822, at*5, 34 U.S.P.Q.2d 1136 (M.D.Fla. June 6, 1994) (refusing to consider plaintiff's new claim not

---

**5.** Plaintiffs argue that they had already named these products in their initial response to Interrogatory No. 6, which they contend focused on false suggestion of sponsorship and dilution, somehow excusing their late notice that they intend to argue that the bulk of ProStyle's merchandise infringes plaintiffs' registered trademarks:

NFLP filed an Amended Interrogatory Response—to Interrogatory No. 7, which addressed trademark infringement—naming other items of ProStyle merchandise that infringed the Packers' registered marks. Many of these items had already been cited by NFLP in its initial Response to Interrogatory No. 6, which focused on unfair competition and dilution, but were nonetheless named

again in the trademark infringement context to preserve NFLP's rights regarding these products, in light of Defendants' narrow interpretation of the open issues remaining for trial.

Plaintiffs' Brief in Opposition to Defendants' Motion in Limine at 4–5 (citations omitted). Once again, plaintiffs have managed to completely befuddle the court. Interrogatory No. 6 specifically excluded any reference to plaintiffs' registered trademarks ("Aside from the marks for which the Packers have received a federal or state registration, . . ."), so the court does not see how it could have given defendants notice regarding which products plaintiffs contend infringe their registered trademarks.

raised in interrogatory responses until after defendant had conducted discovery, prepared its case, and submitted a dispositive motion), *aff'd,* 53 F.3d 347, 1995 WL 225542 (Fed.Cir. 1995); *Baltimore Therapeutic Equip. Co. v. Loredan Biomedical, Inc.,* Civ. No. S 89–1085–GEB, 1993 WL 129781, at *17, n. 18 (E.D.Cal. Feb.19, 1993) (forbidding party from supplementing interrogatory "to allege new theories or contentions after the close of discovery"), *aff'd,* 26 F.3d 138, 1994 WL 124022 (Fed.Cir.1994).

Furthermore, the Seventh Circuit has articulated a strong policy that parties may not amend their complaints after being defeated on summary judgment to add new claims and theories:

> In view of [the plaintiff's] failure to adequately explain the unreasonable delay in moving to amend his complaint to state a claim for punitive damages when all of the information necessary to stating such a claim has been available to him for eighteen months, we agree with the judgment and reasoning of the district court that [the plaintiff's] motion "represents an apparent attempt to avoid the effect of summary judgment [on his other claims]." Because granting [the plaintiff's] motion to amend after such an inexcusably long delay would unduly prejudice the defendants, we hold that the district court did not abuse its discretion in denying [the plaintiff's] motion to amend his complaint to state a claim for punitive damages.

*Kleinhans v. Lisle Sav. Profit Sharing Trust,* 810 F.2d 618, 625–26 (7th Cir.1987); *see also Cleveland v. Porca Co.,* 38 F.3d 289, 297–98 (7th Cir.1994) (plaintiffs not permitted to add new claim after discovery complete and summary judgment motions fully briefed). Although plaintiffs are not attempting to amend their complaint, they are clearly attempting to circumvent the court's prior summary judgment ruling.

However much this court disapproves of plaintiffs' "shifting sands" theories of liability, the court cannot find that defendants will suffer sufficient prejudice to warrant the exclusion of these new allegations from the case, given that trial is still several months away, the discovery process is ongoing, and defendants have utterly failed to allege any prejudice from plaintiffs' amendment of their interrogatories.[6] Therefore, I must deny the defendants' motion in limine to exclude any evidence of allegedly infringing ProStyle apparel other than the "GO PACK GO" apparel.[7]

### 2. Jacob Jacoby Survey and Opinion

Defendants argue that plaintiffs' expert Jacob Jacoby's survey and opinion regarding consumer confusion must be excluded from trial because (1) the ProStyle merchandise that was the subject of the survey is no longer at issue in the case; (2) Jacoby's report contains conclusions that the court has rejected; (3) Jacoby's conclusions are based on a mistaken premise; (4) the survey's confusion question improperly asked for a legal conclusion; and (5) Jacoby is precluded from offering opinions not expressed in his expert report.

Because the court for the time being will allow plaintiffs to argue that the bulk of ProStyle's merchandise infringes plaintiffs' registered marks, the court rejects defendants' first argument. As the court has held, the survey raises a triable issue of fact regarding consumers' actual confusion based on the registered trademarks:

> While the survey was misfocused to the degree that it purported to show secondary meaning, its use of defendant's products and the high incidence of purported actual confusion raise a triable issue of fact as to consumers' actual confusion based on the registered trademarks.

July 25, 1997 Decision and Order at 27.

Defendants then argue that because the Jacoby report includes his conclusion that plaintiffs' claimed common law marks have acquired secondary meaning, which the court rejected in its July 25, 1997 decision and

---

6. The court does not have sufficient facts or argument before it to decide whether the plaintiffs' new theories will hold water and thus expresses no opinion on their merits at this time.

7. Therefore, the court need not address plaintiffs' claim that the Packers should not be bound by NFLP's answers to defendants' interrogatories.

order, the entire report must be excluded to limit the danger that the jury may think that this conclusion has merit. Defendants cite no authority to support this contention, and the court will not exclude the entire report because of this danger.

Defendants' third argument is that Jacoby's report must be excluded from trial because it is based on the mistaken premise that the plaintiffs' alleged common law marks have secondary meaning; for example, the survey results counted a respondent as definitely confused if the answer referenced the colors or town of Green Bay. *See* July 25, 1997 Decision and Order at 21 (disregarding survey evidence on issue of secondary meaning because answers such as the City of Green Bay and Green Bay personnel "are not Packer sources and should not have been included in determining secondary meaning"). However, as plaintiffs have pointed out, Jacoby has retabulated the results of the survey to cure the defects noted by the court in the July 25, 1997 decision. Plaintiffs' Brief in Opposition to Defendants' Motion in Limine at 11. Therefore, the court will not exclude the survey for this reason.

Defendants' fourth argument is that the survey's confusion question, "Do you think that, in order to put out this shirt, the company that put it out did need to get permission, did not need to get permission, or you have no thoughts about this?", improperly asked for a legal conclusion. In *Novo Nordisk of North America, Inc. v. Eli Lilly & Co.*, 96 Civ. 5787, 1996 WL 497018, 1996 U.S. Dist. LEXIS 12807 (S.D.N.Y. Aug. 30, 1996), a similar question formulated by Jacoby caused the court to "discard" his survey results. *Id.* 1996 WL 497018 at *6, at *26. As in this case, Jacoby asked whether the producer of the product shown "had to get authorization" to use another's marks. *Id.* 1996 WL 497018 at *6, at *26 n. 26. The

court in *Novo Nordisk* rejected all survey answers to this question because it "mistakenly ask[ed] respondents what they believe is the legal requirement (because of the use of the phrase 'had to'), rather than asking them merely whether they believed that the maker of the [product] did receive authorization to use the [marks]." *Id.* 1996 WL 497018 at *6, at *25 n. 24.

Plaintiffs respond that defendants are "nitpicking" and that Jacoby had to insert the phrase "need to get permission" or else most people would respond that they did not know whether or not the maker got permission to make the shirt. The court may have been more sympathetic to this position had Jacoby himself not formulated the same survey question rejected in *Novo Nordisk* and had that court not suggested to him what would have been acceptable. However, Jacoby apparently has not learned from his mistakes which, contrary to plaintiffs' assertions that Jacoby's surveys "have been universally relied upon" and have never been rejected by a court, seem to be numerous. *See, e.g., Novo Nordisk*, 1996 WL 497018, at *6, 1996 U.S. Dist. LEXIS 12807, at *26 n. 26; *ConAgra, Inc. v. Geo. A. Hormel & Co.*, 784 F.Supp. 700, 725–28 (D.Neb.1992) (holding that "the Jacoby study ... must be significantly discounted" because of "serious flaws in the study"), *aff'd*, 990 F.2d 368 (8th Cir.1993); *Weight Watchers Int'l, Inc. v. Stouffer Corp.*, 744 F.Supp. 1259, 1274 (S.D.N.Y.1990) (criticizing Jacoby study and noting that "[t]his is not the first time Jacoby's survey findings have been criticized"); *Am. Home Prods. Corp. v. Barr Labs., Inc.*, 656 F.Supp. 1058, 1070 (D.N.J.) (holding that a "number of flaws in the design of [Jacoby's] survey lead me to accord very little weight to its results"),[8] *aff'd*, 834 F.2d 368 (3rd Cir.1987); *Smith v. Ames Dep't Stores, Inc.*, 988

---

8. One of the flaws noted by the *American Home Products* court was one of the same flaws noted by this court in this case, *see* July 25, 1997 Decision and Order at 20, that is, that an "association" of marks did not mean that respondents thought that both products came from the same source:

I have grave doubts as to whether a response from a member of the "generic" group that he or she "associates" defendants' [product] with

the [alleged protected mark] means that the respondent believes that both products come from the same source.... I am loathe to conclude that by "associating" defendants' [product] and the [alleged protected mark], the survey respondents also meant that they could not tell [the products] apart, or believed that they share a common commercial source.

*Am. Home Prods.*, 656 F.Supp. at 1070.

F.Supp. 827, 834 (D.N.J.1997) (holding that "Dr. Jacoby's failure to consider data gleaned from actual consumers limits [his opinion's] value"); *Simon & Schuster, Inc. v. Dove Audio, Inc.*, 970 F.Supp. 279, 291 (S.D.N.Y. 1997) (holding that because of flaws, "the Court assigns significantly reduced weight to the Jacoby Survey's results"); *Jim Beam Brands Co., Inc. v. Beamish & Crawford, Ltd.*, 852 F.Supp. 196, 199 (S.D.N.Y.1994) (holding that "Dr. Jacoby's study however, I find to have questionable value because his questions were leading"); *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd. Partnership*, 34 F.3d 410, 416 (7th Cir. 1994) (criticizing "tricks of the survey researcher's black arts" while assessing Jacoby survey); *Quality Inns Int'l, Inc. v. McDonald's Corp.*, 695 F.Supp. 198, 218–19 (D.Md.1988) (rejecting results of Jacoby survey as irrelevant); *Worthington Foods, Inc. v. Kellogg Co.*, 732 F.Supp. 1417, 1446 (S.D.Ohio 1990) (noting flaws in Jacoby study and holding that "the Court does not place great weight on Dr. Jacoby's study").

Furthermore, defendants correctly point out that Jacoby's conclusion regarding confusion was not stated in terms of what consumers believed should have happened, as the survey question was stated, but instead was phrased in terms of what actually happened, i.e., that consumers believed "that such shirts *were* sponsored or authorized by the Green Bay Packers and/or the NFL." Jacoby Report at 31 (emphasis added). As the court has said previously, it will not "accord trademark protection based upon the public's mistaken notion of the law." July 25, 1997 Decision and Order at 26.[9] Therefore, the court will grant defendants' motion in limine regarding all survey answers to the above question and any conclusions based on those answers. Because all four conclusions of the Jacoby study thus must be excluded from trial, the court will exclude his entire report and survey.

Finally, defendants argue that Jacoby is precluded from offering opinions not expressed in his expert report, thereby excluding him entirely from the case. Defendants cite no authority for this proposition, and, considering that discovery is ongoing and that several months remain before trial, the court at this time will not preclude Jacoby from testifying.

### 3. Paragraph 4(b) of Standard NFL Player Contract

Defendants argue that paragraph 4(b) of the Standard NFL Player Contract, by which players give the NFL Players Association exclusive rights to use their names and images in licensing programs which use six or more NFL player images on products, must be excluded from trial because: (1) it is not clear whether ProStyle's contracts with NFL players violate paragraph 4(b); (2) the NFL Players Association, the party that would have standing to complain about ProStyle's alleged violation of paragraph 4(b), is not a party to this action; and (3) evidence of paragraph 4(b) is more likely to confuse the jury than to provide evidence helpful in resolving the case. Plaintiffs respond that the licensing provision is unambiguous and clearly was violated by defendants, that plaintiffs were harmed by this violation, and that evidence of paragraph 4(b) is relevant to plaintiffs' unfair competition claim that defendants interfered with the NFLPA's and the Packers' advantageous contractual relations with Packers' players.

Regarding defendants' first argument, the court finds that it is unclear whether Packer players violated paragraph 4(b) of their contracts by allowing ProStyle to use their

---

**9.** Perhaps the public's mistaken belief in the broad sweep of the trademark laws explains why a substantial 10.8% of Point–of–Sale survey respondents believed that one would need to get permission from the Green Bay Packers or the NFL to market a shirt bearing a generic yellow football helmet and the words, "Ellison Bay Football ." Jacoby Report at 27. The court surmises that the mistaken belief of this not-inconsequential segment of respondents shows the bias that may have been caused by hinting to survey respondents that the maker may have needed to get permission from someone to make the shirt. In other words, it seems unlikely that the average person walking down the street would think upon seeing an "Ellison Bay Football" shirt that the makers needed to get permission from the NFL or the Packers to market it, while merely raising the possibility of needing to get permission through a survey question could trigger such thoughts where they would not otherwise occur.

names or images. The paragraph applies only to "licensing programs in which a licensee utilizes a total of six (6) or more NFL player images on products." Raskopf Affidavit Ex. 8. At least one Packer player interpreted this to mean that six or more images must appear together on a single product before paragraph 4(b) applies, Fredrickson Declaration Ex. A, and the court believes that this may be a reasonable interpretation of the clause.

Of course, whether the clause is ambiguous or not is irrelevant because plaintiffs have no standing to assert breach of a contract solely between NFL players and the NFL Players Association, none of whom are parties to this action. Paragraph 4(b) explicitly states that "[n]either Club nor the League is a party to the terms of this paragraph, which is included herein solely for the administrative convenience of Player and the NFLPA." Raskopf Affidavit Ex. 8. Other courts similarly have rejected plaintiff NFLP's attempt to assert standing in disputes involving only the NFLPA and NFL players. *See Nat'l Football League Properties, Inc. v. Hi–Pro Marketing, Inc.*, No. 92 Civ. 1456(MJL), 1992 WL 204370, at *3–4 (S.D.N.Y. Aug.11, 1992); *see also Aikman v. AAA Sports, Inc.*, No. 92 Civ. 1457(MJL), 1992 WL 204397, at *4 (S.D.N.Y. Aug.11, 1992).[10]

Furthermore, there is no indication that defendants even knew of paragraph 4(b), much less that they knowingly violated it, as plaintiffs contend (again, without any support whatsoever). In this case, plaintiffs designated this document "Highly Confidential," preventing even Sheri Tanner from seeing it,

indicating that it is not a document generally available or well-known to the public. It seems likely that only NFL players could have told defendants about the restrictions expressed in paragraph 4(b), and it appears that the players didn't even know of those restrictions. *See* Fredrickson Decl. Ex. B at 25 (Robert Brooks Depo.); Fredrickson Decl. Ex. C at 22–24 (Mark Chmura Depo.); Fredrickson Decl. Ex. D at 24 (Santana Dotson Depo.); Fredrickson Decl. Ex. G at 23 (Craig Newsome Depo.). Also, as defendants note, there is no indication that defendants misrepresented the number of players with whom they had contracts to induce players to breach the clause in question.[11] Therefore, the court will grant defendants' motion in limine to exclude evidence of paragraph 4(b) of the Standard NFL Player Contract from trial.

## B. PLAINTIFFS' MOTION IN LIMINE

### 1. Tanner's Sex Discrimination Action

Plaintiffs seek to have excluded from trial any evidence of defendant Sheri Tanner's sex discrimination action against Green Bay America's Pack LLC, Royle Communications Group, Inc., Rod Kresal, and John Weishar, arguing that its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury (pursuant to Fed.R.Evid. 403). Plaintiffs argue that defendants' purpose in introducing such evidence would be to suggest plaintiffs' improper motive in bringing the present suit, which, even if

---

**10.** Plaintiffs' argument that they have standing to assert breach of this provision is typical of the wholly unsupported leaps of logic that have characterized most of their arguments in this action:

Paragraph 4(b), the contractual provision governing the group licensing program of the NFLPA, provides for the distribution throughout the NFLPA of revenue gained from promotional programs that utilize more than six NFL players. A violation of the group licensing provision thus effectively takes money away from other players, as well as the NFLPA. The NFLPA, the players *and the Packers* are thus harmed by Defendants' knowing violation.

Plaintiffs' Brief at 13 (emphasis added). Plaintiffs' unpersuasive attempt to meld their interests with those of the NFLPA is even more dubious

considering well-known clashes between plaintiffs and the NFLPA in the past. *See, e.g., Nat'l Football League Players Ass'n v. Nat'l Football League Properties, Inc.,* No. 90 Civ. 4244(MJL), 1991 WL 79325 (S.D.N.Y. May 7, 1991) (NFLPA claimed, inter alia, that NFLP and NFL unlawfully induced players to breach their group licensing authorizations with NFLPA and instead sign with NFLP).

**11.** Absent any evidence of this or evidence that defendants even knew of paragraph 4(b), the court rejects plaintiffs' "unfair competition" claim that defendants, through their alleged violation of the group licensing program, interfered with plaintiffs' contract relations with Packer players.

proven, is irrelevant to the issues presented by this case. Plaintiffs further argue that defendants cannot prove any connection between the two actions and that if the court allowed the introduction of this evidence, plaintiffs would dispute it on its merits, thus causing a mini-trial that could waste judicial resources and confuse and prejudice the jury.

Defendants respond that this evidence is admissible for several reasons: (1) plaintiffs' possible improper motive in interfering with defendants' prospective business relations is an element of defendants' counterclaim; (2) this evidence is relevant to the trademark claims, because the jury will assess consumer confusion, and evidence that plaintiffs brought suit for reasons other than preventing consumer confusion is relevant to that issue; (3) the court must consider plaintiffs' conduct in determining whether injunctive relief is warranted; and (4) this evidence bears on the credibility of Packer employees who will be called to testify, especially Jeff Cieply.

The court holds that evidence of Tanner's sex discrimination action only could be admissible through defendants' counterclaim alleging intentional interference with its prospective business relations, because plaintiffs' possible improper motive is an element of that claim. Such evidence is not relevant to consumer confusion, however, as not one of the seven factors to be considered in that analysis bears any relation to a trademark holder's motive in bringing suit. Nor is such evidence relevant because the court must weigh plaintiffs' conduct in determining the

issue of injunctive relief, as the conduct to be weighed would involve plaintiffs' unlawful activity (their "unclean hands"), not their motive in asking for injunctive relief. *See, e.g., Shondel v. McDermott,* 775 F.2d 859, 868 (7th Cir.1985). Finally, the fact that some of plaintiffs' potential witnesses may be biased or prejudiced against Tanner because of her sex discrimination suit is simply not probative enough to counteract the substantial prejudice, delay, and confusion of issues that could be caused by an extensive mini-trial on her sex discrimination claim. *See* Fed. R.Evid. 403.[12]

Because plaintiffs have expressed their intent to move for summary judgment on defendants' counterclaim alleging intentional interference with their prospective business relations, the court feels that it would be premature to rule on plaintiffs' motion to exclude evidence of Tanner's sex discrimination action, as the issue would be mooted if the court grants plaintiffs' motion for summary judgment on that counterclaim. If defendants' counterclaim survives summary judgment, the court may rule on this motion in limine then.[13]

### 2. Third–Party Uses of Packer Trademarks

Plaintiffs contend that admission at trial of any evidence of unauthorized third-party uses of Packer trademarks is limited to proving the strength of the marks, which defendants concede, thereby making that evidence irrelevant and inadmissible. Plaintiffs fur-

---

**12.** Thus, defendants may not introduce evidence of Tanner's action because of this alleged bias or prejudice, but they may impeach plaintiffs' witness Jeff Cieply about his alleged comments regarding women in the Packer organization if they can prove that he actually made these comments and that they show bias against Tanner. [Plaintiffs cite Fed.R.Evid. 608(b), but the strictures of that rule do not apply when impeaching evidence is used to prove bias, as it would in this case. *See, e.g., United States v. Veras,* 860 F.Supp. 471, 478 (N.D.Ill.1994), *aff'd,* 51 F.3d 1365 (7th Cir.), *cert. denied,* 516 U.S. 999, 116 S.Ct. 540, 133 L.Ed.2d 444 (1995).] However, the only evidence defendants have offered thus far of these alleged comments, a photocopy of a Milwaukee Journal–Sentinel article which notes that Tanner attributed discriminatory comments to Cieply in her sex discrimination complaint, is

not sufficient proof. Even if proved, evidence of Cieply's alleged comments still would have to clear the hurdle of Fed.R.Evid. 403 to be allowed at trial.

**13.** However, given the facts alleged by plaintiffs indicating that there is no connection between Tanner's sex discrimination action and the present action, namely, that neither plaintiff was named as a defendant in Tanner's action, that NFLP, an entity totally unconnected with Tanner, may have recommended the present suit before the Packers did, and that Tanner's action apparently has settled, the court expresses doubt as to whether an inference can be drawn that Tanner's action is related to the present suit. Federal Rule of Evidence 403 also might bar this evidence.

ther argue that they are not required to prosecute every violation of their trademark rights and that defendants will seek to introduce evidence of unauthorized third-party uses of Packer trademarks to argue plaintiffs' improper motive in bringing suit. Finally, plaintiffs argue that the minimal probative value of this evidence is substantially outweighed by the prejudice, confusion, and delay that would result.

Defendants respond that evidence of unauthorized third-party uses of Packer trademarks is relevant to the likelihood of confusion analysis. Defendants also respond that they do not concede the strength of plaintiffs' uniform design mark with respect to non-football-game use, nor do they concede the strength of the phrase "GREEN BAY AMERICA'S PACK USA," which plaintiffs contend was infringed by defendants' "GO PACK GO" apparel. Finally, defendants contend that evidence of numerous unchallenged third-party uses of Packer trademarks shows defendants' good faith in using similar marks.

The court agrees with plaintiffs that evidence of unauthorized third-party uses of Packer trademarks is limited to proving the strength or weakness of the marks. *See, e.g., Quality Inns Int'l, Inc.* 695 F.Supp. at 214 (holding that "evidence of third-party uses introduced by Quality Inns therefore is probative only of the strength and scope of McDonald's family of marks"); *Pebble Beach Co. v. Tour 18 I, Ltd.,* 942 F.Supp. 1513, 1541 (S.D.Tex.1996) (holding that existence of multiple users of a mark is relevant only to strength or weakness of mark).

Defendants cite two cases which they contend hold that evidence of third-party uses is also relevant to other considerations in assessing likelihood of confusion. *Nat'l Cable Television Ass'n, Inc. v. Am. Cinema Editors, Inc.,* 937 F.2d 1572, 1579 (Fed.Cir.1991); *Lloyd's Food Prods., Inc. v. Eli's, Inc.,* 987 F.2d 766, 768 (Fed.Cir.1993). However, the

passages in these cases quoted by defendants in support of this assertion relate only to the strength or weakness of the marks, thereby defeating defendants' contention. *See Nat'l Cable,* 937 F.2d at 1579–80 ("Cable first asserts that ACE is a 'weak' mark because uses of ACE by unrelated companies are widespread ... [passages quoted by defendants] ... In sum, Cable's argument that it can use ACE because ACE is a 'weak' mark ... is ... unpersuasive."); *Lloyd's,* 987 F.2d at 768 (holding that TTAB erred by not considering third party uses and thus "reject[ing] Lloyd's Foods' contention that the mark was 'weak' "). Therefore, the court will grant plaintiffs' motion in limine to the extent that it will not allow defendants to introduce evidence of third-party uses of plaintiffs' marks about which defendants concede their strength, namely, the marks "PACKERS," "GREEN BAY PACKERS" and the helmet design bearing the "G" logo. *See* Joint Pretrial Report, Ex. 8(b)(2) at 10.

However, defendants do not concede the strength of plaintiffs' uniform design mark with respect to non-football-game use, nor do they concede the strength of the phrase "GREEN BAY AMERICA'S PACK USA," which plaintiffs contend was infringed by defendants' "GO PACK GO" apparel. Defendants state that they plan to dispute the strength of these marks at trial by offering evidence of third-party uses of photos of players in uniform and third-party uses of the phrase "GO PACK GO." Plaintiffs do not respond to this contention regarding the "GO PACK GO" third-party uses, and the court has not seen this evidence, so the court will not exclude this evidence at this time (though plaintiffs are free to renew this motion at or closer to trial). Regarding the evidence of third-party uses of photos of players in uniform, again, the court will not exclude evidence that it has not seen.[14] Therefore, plaintiffs' motion to exclude evidence of third-party uses of Packer marks will be granted in part and denied in part.[15]

---

14. However, the court questions whether evidence of third-party uses of photos of players in plain uniforms with no Packer logos and no green and yellow striping is relevant to proving the alleged weakness of the Packers' uniform design mark.

15. The court rejects defendants' contention that evidence of numerous unchallenged third-party uses of Packer trademarks shows defendants' good faith in using similar marks. Defendants cite no legal authority or factual support for this proposition.

### 3. Evidence of Consumer Motivation

Plaintiffs argue that "the relevant issue is the degree to which consumers mistakenly believe that the Packers have sponsored or are associated with Defendants' products," Plaintiffs' Brief in Support of Plaintiffs' In Limine Motion to Preclude Evidence at 11; however, they also argue that a "showing that consumers purchase Defendants' products because of assumptions of official sponsorship is not only unnecessary as a matter of trademark law, but also superfluous because sponsorship confusion necessarily implies consumer motivation to acquire officially sponsored or sanctioned merchandise ." *Id.* at 13. Plaintiffs apparently disagree with this court's prior holding that "if consumers buy ProStyle's clothing goods because they are excited about the Packers' team, then there is no unfair competition on that basis alone," July 25, 1997 Decision and Order at 25, because they argue that "[t]he very fact that consumers purchase Defendants' merchandise to demonstrate their support for the Packers evidences their confusion as to the sponsorship of Defendants' goods." Plaintiffs' Brief in Support of Plaintiffs' In Limine Motion to Preclude Evidence at 13.

Defendants respond that these arguments are "a muddle that make no sense whatsoever," and the court agrees. The court has previously complained about plaintiffs' baffling arguments, and plaintiffs' current arguments are no exception: "Either this court has seriously misunderstood the plaintiffs' argument or the plaintiffs' lawyers have been spending too much time at mad tea parties in Wonderland." May 19, 1998 Order at 3 n.2. Therefore, the court will deny plaintiffs' motion in limine to preclude evidence of consumer motivation. Plaintiffs are free to renew this motion if and when they eschew obfuscation and present their arguments to the court in a way that makes sense.

### III. CONCLUSION

Therefore, the court will grant in part and deny in part defendants' motion in limine and will grant in part and deny in part plaintiffs' motion in limine.

Accordingly,

IT IS ORDERED that defendants' motion in limine be and the same is hereby **GRANTED IN PART** and **DENIED IN PART;** and

IT IS FURTHER ORDERED that plaintiffs' motion in limine be and the same is hereby **GRANTED IN PART** and **DENIED IN PART.**