The BEACON MUTUAL INSURANCE COMPANY, Plaintiff,

v.

ONEBEACON INSURANCE GROUP, Defendant.

No. 01–354S.

United States District Court, D. Rhode Island.

March 17, 2003.

Steven E. Snow, Esq., Michael A. Gamboli, Esq., Partridge Snow & Hahn, LLP, Providence, RI, for Plaintiffs.

William M. Dolan, III, Esq., Brown Rudnick Berlack Isreals, LLP, Providence, RI, and Steven A. Kaufman, Esq., Martha J. Collins, Esq., Ropes & Gray, Boston, MA, for Defendants.

## ORDER

SMITH, District Judge.

This is a trademark infringement and unfair competition action. Before the Court is the Motion to Exclude Testimony of Jacob Jacoby ("Motion to Exclude") brought by Defendant OneBeacon Insurance Group ("Defendant" or "OneBeacon") pursuant to Federal Rule of Evidence 702. Plaintiff The Beacon Mutual Insurance Company ("Plaintiff" or "Beacon") filed a timely objection to the motion and this Court heard oral argument on January 24, 2003. Based on a review of all relevant materials and for the reasons that follow, this Court denies OneBeacon's Motion to Exclude.

*Facts*

The following facts are not in dispute. Plaintiff is the largest writer of workers' compensation insurance in the state of Rhode Island, and has used the name "The Beacon Mutual Insurance Company" and a lighthouse logo since 1992. Plaintiff alleges that Defendant's use of the name "One-Beacon" and a lighthouse logo (which began in 2001) violates the Lanham Act (15 U.S.C. § 1125(a)) and Rhode Island unfair competition laws, and constitutes a service mark infringement and a dilution of its common law trademark.

Plaintiff retained Jacob Jacoby ("Dr.Jacoby") to conduct a market survey (or, more precisely, three interrelated surveys between December 2001 and May 2002) of over 100 consumers, ostensibly to determine whether the name "The Beacon" and the lighthouse symbol gave rise to an association with Plaintiff. Defendant moves to exclude the results of the survey and Dr. Jacoby's testimony on two grounds: (1) that the survey is irrelevant because it is ambiguous about whether the name "The Beacon" is associated with a single source and whether that source is the Plaintiff; and (2) that the survey and Dr. Jacoby's opinion are unreliable because they fail to take into account various allegedly pertinent factors.

*Analysis*

I. *Rule 702 and the Daubert/Kumho Tire Standard of Review*

Federal Rule of Evidence 702 provides: If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

■ The Supreme Court's *ex cathedra* pronouncements in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) offer district courts guidance in assessing the admissibility of expert testimony. Under *Daubert*, the district court undertakes a "gate-keeping" function, and determines "whether the reasoning or methodology underlying the testimony is scientifically valid and … whether that reasoning or methodology properly can be applied to the facts in issue." 509 U.S. at 592–93, 113 S.Ct. 2786. Those factors that may assist the district court in making this determination include: whether the theory/technique can be and has been tested; whether the theory/technique has been subjected to peer review and publication; the known or potential rate of error; and the level of the theory/technique's acceptance within the relevant scientific community. *Id.* at 593–94, 113 S.Ct. 2786. "Although the approach is flexible by its nature (after all, expert testimony and the peculiar facts of each case so demand), the overarching concern is on the 'evidentiary relevance and reliability' of the proposed testimony." *Seahorse Marine Supplies, Inc. v. Puerto Rico Sun Oil Co.*, 295 F.3d 68, 81 (1st Cir.2002) (citing *Daubert*, 509 U.S. at 595, 113 S.Ct. 2786).

■ In *Kumho Tire*, the Supreme Court held that the gate-keeping function applies to technical and other specialized knowledge in addition to scientific testimony. 526 U.S. at 141, 119 S.Ct. 1167. The court stressed that the district court must have "considerable leeway" in both "how to determine reliability" and "its ultimate

conclusion." *Id.* at 152–53, 119 S.Ct. 1167. Most importantly for the instant motion, "[t]he ultimate credibility determination and the testimony's accorded weight are in the jury's province." *Seahorse Marine Supplies,* 295 F.3d at 81 (citing *Mitchell v. United States,* 141 F.3d 8, 16–17 (1st Cir. 1998)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596, 113 S.Ct. 2786.

## II. *Application to Dr. Jacoby's Survey and Testimony*

■ OneBeacon argues that the Court should exclude Dr. Jacoby's survey evidence and related testimony on grounds of relevance, because "his conclusion that 'The Beacon' has acquired secondary meaning is based on survey data that bear no logical relationship to the undisputed facts of this case." Defendant OneBeacon's Motion to Exclude Testimony of Jacob Jacoby ("Defendant's Memorandum"), p. 6. Specifically, OneBeacon claims that the responses Dr. Jacoby elicited in his survey are irrelevant to the dispute because they are "ambiguous as to whether 'The Beacon' is identified with a single source and, if so, whether that single source (even if unnamed) is Beacon Mutual." *Id.*

Plaintiff rejoins that the "possibility that some respondents may have associated 'The Beacon' with OneBeacon, rather than with Beacon," does not make the survey irrelevant. Plaintiff's Memorandum of Law in Opposition to Motion to Exclude Testimony of Jacob Jacoby ("Plaintiff's Memorandum"), p. 4. Many of the survey's respondents, Plaintiff argues, associated "The Beacon" with "the largest workers compensation carrier in Rhode Island,"

which *a fortiori* would refer to Beacon. *Id.*

The parties also debate the significance of *The President and Trustees of Colby College v. Colby College New Hampshire,* 508 F.2d 804 (1st Cir.1975). There, the plaintiff sued to enjoin the defendant from using the name "Colby College." The evidence that the plaintiff submitted included a market survey of 1,500 New England residents, purporting to demonstrate that the residents associated the name "Colby College" with the plaintiff, and indicating that

> well over 50% of all respondents identified 'Colby College' as a four-year, coeducational institution, located in Maine, thus distinguishing plaintiff from defendant according to three major characteristics by which the two institutions may be distinguished.

*Id.* at 809. The district court rejected the survey because (1) the defendant's expert found that the questions posed were "ambiguous"—that is, that the survey's respondents might have been confused as to the true character of defendant's institution, and thus might have intended to identify the defendant as "Colby College," and (2) the survey failed to indicate " 'the confidence level of [its] validity …,' in light of its attempted extrapolation from 1500 respondents to at least two million New England residents." On review, the First Circuit "ha[d] difficulty in following th[e] reasoning" of the first argument, and offered the following as to the second:

> This, in effect, questioned the surveyor's basic expertise. While, of course, expert testimony need not be accepted, we find little reason for rejection. In any event, the court's doubts do not remedy the lack of affirmative evidence to the contrary…. To find on this record, basically because occasional newspaper items referred to defendant as Colby College

and some persons spoke of defendant simply as Colby, plaintiff had not established a secondary meaning in its seventy year name Colby College must be termed inescapably erroneous.

*Id.* at 809–10 and n. 5.

OneBeacon attempts to distinguish *Colby College* on the ground that Dr. Jacoby's survey does not permit an inference that the respondents identified "The Beacon" with Plaintiff, "rather than with OneBeacon or some other insurance company offering workers' compensation insurance with 'beacon' in its name or logo," because, unlike the survey in *Colby College*, Dr. Jacoby's survey allegedly does not advance any differentiating factors. *See* Defendant's Memorandum, p. 7. Even if true,[1] however, this argument proves too little. The First Circuit found that the *Colby College* survey, by itself, *established* sec-

---

1. In fact, there is no reason to assume that this is true, based on a sampling of the survey responses:

   "Beacon Mutual. It's an insurance company that was started ten years ago by the state." Respondent # 1013

   "It's the only workmen's compensation insurance company around here." Respondent # 1031.

   "The Beacon is an insurance [sic]. It's a mutual insurance company. They sell workmen's comp insurance." Respondent # 1033.

   "The only one that does it and does it well. It's all they do—Workmen's Compensation." Respondent # 1084.

   Plaintiff's Memorandum, p. 6. Defendant responds that it, too, provides workers' compensation insurance. Counsel for OneBeacon conceded at oral argument, however, that OneBeacon sells to "an infinitesimally small percentage" of the market for workers' compensation insurance. Transcript of Oral Argument, Jan. 24, 2003, p. 5. At the least, therefore, the allegations of ambiguity are relevant only to the weight that Dr. Jacoby's survey should be accorded by a fact finder, not to its relevance *per se.*

2. At oral argument, counsel for OneBeacon drew an analogy between this case and the

---

ondary meaning, vacated the decision of the district court, and remanded the case for entry of an injunction prohibiting the defendant's use of the name "Colby College." *See* 508 F.2d at 807, 812. Moreover, the First Circuit nowhere stated that the presence *vel non* of distinguishing factors in the survey was indispensable to its ruling that the survey should have been considered and accepted by the fact finder. Nothing in *Colby College* warrants the wholesale exclusion of Dr. Jacoby's survey.[2]

It is true that the admissibility of market surveys as evidence in trademark cases is a thorny question. *See generally* Jonathan Hudis, *Experts In Intellectual Property Cases: A New Paradigm,* 82 J. Pat. & Trademark Off. Soc'y 651 (2000). Some courts have expressed tepidity regarding the utility of consumer surveys.

evidentiary rulings in *Gen. Elec. Corp. v. Joiner,* 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). In *Joiner,* however, the reasons for excluding animal studies that purported to show carcinogenesis were overwhelming:

> [T]he animal studies on which respondent's experts relied did not support his contention that exposure to PCB's had contributed to his cancer. The studies involved infant mice that had developed cancer after being exposed to PCB's. The infant mice had had massive doses of PCB's injected into their peritoneums or stomachs. Joiner was an adult human being whose alleged exposure to PCB's was far less than the exposure in the animal studies. The PCB's were injected into the mice in a highly concentrated form. The fluid with which Joiner had come into contact generally had a much smaller PCB concentration.... The cancer that these mice developed was alveologenic adenomas; Joiner had developed small-cell carcinomas.

*Id.* at 144, 118 S.Ct. 512 (footnote omitted). The arguments advanced by OneBeacon in support of excluding Dr. Jacoby's study are considerably less compelling and far-reaching than those set forth in *Joiner.*

*See, e.g., Ringling Bros.—Barnum & Bailey Combined Shows, Inc. v. Utah Division of Travel Development,* 170 F.3d 449, 465 (4th Cir.1999), *cert. denied,* 528 U.S. 923, 120 S.Ct. 286, 145 L.Ed.2d 239 (1999) (survey evidence, if "skillfully constructed," can demonstrate consumers' "mental association" between the parties' marks and "consumer impressions from which actual harm and cause rationally [can] be inferred"); *Nabisco, Inc. v. PF Brands, Inc.,* 191 F.3d 208, 224 (2nd Cir.1999) (deeming surveys to be "expensive, time-consuming and not immune to manipulation"); *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Limited Partnership,* 34 F.3d 410, 415 (7th Cir. 1994) ("[the judicial system] might be improved by asking each party's hired expert to designate a third, neutral expert who would be appointed by the court to conduct the necessary studies").

Courts have stated many reasons for excluding survey evidence due to fatal flaws in methodology of design or implementation. *See, e.g., Spraying Systems Co. v. Delavan, Inc.,* 975 F.2d 387, 394 (7th Cir.1992); *Nat'l Football League Properties, Inc. v. Green Bay Packers, Inc.,* 57 F.Supp.2d 665, 673 (E.D.Wis.1999); *American Basketball Assn. v. AMF Voit, Inc.,* 358 F.Supp. 981, 986 (S.D.N.Y.), *aff'd w/o opin.,* 487 F.2d 1393 (2nd Cir.1973); *Start-*

*er Corp. v. Converse, Inc.,* 170 F.3d 286, 296–297 (2nd Cir.1999).

Likewise, surveys have been upheld and accepted by courts, notwithstanding attacks on their methodology. *See, e.g., STX, Inc. v. Trik Stik, Inc.,* 708 F.Supp. 1551, 1559 (N.D.1988) (attack based upon the timing of the survey after infringement had begun); *Pickseed West, Inc. v. Stover Seed Co.,* 108 F.3d 1134, 1142–1143 (9th Cir.1997) (attacks based upon the object of the study, propriety of the universe of respondents chosen, the limited geographic area in which the survey was taken, and the leading nature of the questions did not mandate striking the survey); *United States Surgical Corp. v. Orris, Inc.,* 983 F.Supp. 963, 967–68 (D.Kan.1997), *aff'd,* 185 F.3d 885 (Fed.Cir.1999) (attacks based upon questions requiring interpretation and speculation, a failure to discount the influence of plaintiff's advertising activities, and the fact that the survey was conducted solely for the purposes of litigation did not mandate striking the survey).

All this serves to show that the decision whether to admit Dr. Jacoby's survey evidence ultimately rests in the Court's discretion. Bearing in mind the *Daubert/Kumho* analytical scheme, the Court begins by noting that Dr. Jacoby is a thoroughly trained and experienced market researcher, and that his survey methods and practices have been admitted by numerous courts throughout the country.[3]

**3.** Those courts admitting Dr. Jacoby's surveys, listed at footnote 1 of page 7 of Plaintiff's Memorandum, include two circuit courts and seven district courts. Indeed, no less of a law and economics luminary than Judge Posner of the Seventh Circuit has characterized Dr. Jacoby's survey evidence and related testimony as having "all the trappings of social scientific rigor." *Indianapolis Colts,* 34 F.3d at 415. Nevertheless, Defendant points out that the Eastern District of Wisconsin has excluded Dr. Jacoby's survey evidence relatively recently. *See Nat'l Football League Properties, Inc. v. Prostyle, Inc.,* 16 F.Supp.2d

1012, 1018–19 (E.D.Wis.1998). There, however, the court excluded the evidence because Dr. Jacoby included a particularly confusing question in his survey (after having been told explicitly that such a question was impermissible), and because that question impugned the validity of the conclusions reached in his report. *Id.* at 1019. OneBeacon makes no allegations that Dr. Jacoby's questions in this survey were improper.

Notwithstanding the distinctions between *Prostyle* and this case, it is true that a number of courts have criticized Dr. Jacoby's studies, at times discounting certain elements of the

As to this particular survey, Dr. Jacoby has testified that it was conducted with a statistically appropriate sample size and with several controls to insure reliability, including rotation of the order of questions, interviewer training, field check-in and respondent validation. Defendant argues that Dr. Jacoby did not calculate the survey's response rate, but at oral argument, Plaintiff's counsel represented to the Court that, in fact, all the data necessary for this calculation is available, but simply has not been requested by the Defendant. Transcript of Oral Argument, p. 38. Defendant also criticizes Dr. Jacoby's universe of respondents, claiming that it is over-inclusive, and his validation techniques, claiming that there are likely to be ten (10) or more invalid responses included in the results. These criticisms, valid as they may be, are not sufficiently weighty to justify exclusion of the survey altogether under the applicable gate-keeper standard. The alleged infirmities OneBeacon identifies are best challenged by the type of "[v]igorous cross-examination [and] presentation of contrary evidence" envisioned by *Daubert.* 509 U.S. at 596, 113 S.Ct. 2786.

*Conclusion*

For the foregoing reasons, OneBeacon's Motion to Exclude Testimony of Jacob Jacoby is DENIED.

IT IS SO ORDERED.

particular study in question. *See Prostyle,* 16 F.Supp.2d at 1018–19 (and cases cited therein). Such criticism may or may not apply later in this litigation, but it does not support the draconian remedy of wholesale exclusion at this early stage.